1  DARON L. TOOCH (State Bar No. 137269)
   E-Mail: dtooch@health-law.com
2  DAVID J. TASSA (State Bar No.
   E-Mail: dtassa@health-law.com
3  **HOOPER, LUNDY & BOOKMAN, P.C.**
   1875 Century Park East, Suite 1600
4  Los Angeles, California 90067-2517
   Telephone: (310) 551-8111
5  Facsimile: (310) 551-8181

6  Attorneys for Plaintiff,
   NORTHBAY HEALTHCARE GROUP – HOSPITAL
7  DIVISION dba NORTHBAY MEDICAL CENTER
   AND VACAVALLEY HOSPITAL

8

9              **UNITED STATES DISTRICT COURT**

10             **NORTHERN DISTRICT OF CALIFORNIA**

11

12 NORTHBAY HEALTHCARE GROUP        Case No. 3:17-CV-02929-WHO
   – HOSPITAL DIVISION dba
13 NORTHBAY MEDICAL CENTER          **FIRST AMENDED COMPLAINT**
   AND VACAVALLEY HOSPITAL,         **FOR:**
14
              Plaintiff,            1. **VIOLATIONS OF ERISA (29**
15                                     **U.S.C. § 1132(a)(1)(B))**
        vs.                         2. **VIOLATIONS OF ERISA (29**
16                                     **U.S.C. § 1132(a)(3))**
   BLUE SHIELD OF CALIFORNIA        3. **BREACH OF IMPLIED-IN-**
17 LIFE & HEALTH INSURANCE, a for-     **LAW CONTRACT**
   profit corporation; CALIFORNIA      **(EMERGENCY SERVICES)**
18 PHYSICIANS' SERVICE dba BLUE     4. **BREACH OF IMPLIED-IN-**
   SHIELD OF CALIFORNIA; and           **LAW CONTRACT (POST-**
19 DOES 1-50 inclusive,                **STABILIZATION SERVICES)**
                                     5. **BREACH OF IMPLIED-IN-**
20            Defendant.               **FACT CONTRACT (POST-**
                                       **EMERGENCY SERVICES)**
21                                   6. **INTENTIONAL**
                                       **INTERFERENCE WITH**
22                                     **CONTRACT – PATIENTS**
                                     7. **SERVICES RENDERED**
23                                   8. **UNFAIR BUSINESS**
                                       **PRACTICES**
24                                   9. **DECLARATORY RELIEF**

25                                  **DEMAND FOR JURY TRIAL**

26                                  The Hon. William H. Orrick

27                                  Trial Date:        None Set

28

1233207.1                    FIRST AMENDED COMPLAINT

*(left margin, vertical text)* HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL.: (310) 551-8111 • FAX: (310) 551-8181

Plaintiff NorthBay Healthcare Group – Hospital Division dba NorthBay Medical Center and VacaValley Hospital (hereinafter referred to as "NorthBay") complains and alleges as follows:

## I.

## JURISDICTION AND VENUE

1.     NorthBay brings this action pursuant to the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1002 *et seq.*; and pursuant to the laws of the State of California.  This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331, because the action arises under the laws of the United States; and pursuant to 29 U.S.C. § 1132(e)(1), because the action seeks to enforce rights under ERISA; and supplemental jurisdiction pursuant to 28 U.S.C. § 1367, because there is a common nucleus of facts relating to Defendants' wrongful behavior.

2.     This Court is the proper venue for this action pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claims alleged herein occurred in this Judicial District.

## II.

## THE PARTIES

3.     NorthBay is a nonprofit healthcare organization that owns and operates two hospitals in Solano County, California – NorthBay Medical Center in Fairfield and NorthBay VacaValley Hospital in VacaVille.  NorthBay Medical Center (hereinafter referred to as "NMC") is a 132-bed hospital providing comprehensive acute care, including medical, surgical, perinatal, advanced critical care, emergency, trauma, delivery, pediatrics, and intensive care (neonatal and adult).  NorthBay VacaVille Hospital (hereinafter referred to as "VacaVille," and, together with NMC, the "NorthBay Hospitals") is a 50-bed, non-profit hospital providing a wide range of medical services, including 24-hour emergency care, intensive care, and surgical services.  The NorthBay Hospitals are, and at all relevant times were, California

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL.: (310) 551-8111 • FAX: (310) 551-8181

1  entities organized and existing under the laws of California, with their principal

2  places of business in Solano County, California.  The NorthBay Hospitals are, and at

3  all relevant times were, hospitals and health care providers licensed and in good

4  standing under the laws of California.

5  **A.    Blue Shield**

6      4.    NorthBay is informed and believes that defendants Blue Shield of

7  California Life & Health Insurance ("BSC Life") and California Physicians'

8  Service, doing business as Blue Shield of California ("BSC", and together with BSC

9  Life, "Blue Shield") are corporations duly organized and existing under the laws of

10  the State of California and are authorized to transact, and are in fact transacting, the

11  business of insurance in California.  NorthBay also is informed and believes that

12  BSC is licensed by the Department of Managed Health Care ("DMHC") to operate

13  as a health care service plan pursuant to the Knox-Keene Health Care Service Plan

14  Act of 1975 ("Knox-Keene Act"), Health and Safety Code sections 1340 *et seq.,* and

15  the regulations promulgated thereunder.  NorthBay also is informed and believes

16  that BSC Life is regulated by the California Department of Insurance under the

17  California Insurance Code.

18      5.    NorthBay is informed and believes that Blue Shield's principal place of

19  business is in California and that Blue Shield has plan members that receive medical

20  services at The NorthBay Hospitals.

21  **B.    Other Payors**

22      6.    NorthBay also is informed and believes that Blue Shield administers

23  claims or benefit plans for other payors whose insureds are treated by NorthBay (the

24  "Other Payors").  NorthBay is informed and believes that Blue Shield is either an

25  independent contractor of or the agent for the Other Payors.  NorthBay is informed

26  and believes that Blue Shield plays a core role for the Other Payors in that it

27  effectively controls the decision whether to honor or deny a claim under the plans,

28  or the amount of the payment under the plans.  NorthBay is informed and believes

**HOOPER, LUNDY & BOOKMAN, P.C.**
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL.: (310) 551-8111  •  FAX: (310) 551-8181

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL.: (310) 551-8111 • FAX: (310) 551-8181

1  that Blue Shield functions as the plan administrator in: (a) authorizing the provision

2  of services to the Other Payors' members; (b) receiving bills from providers; (c)

3  pricing bills from providers; (d) processing and administering the bills and appeals;

4  (e) approving or denying the bills; (f) deciding not to arrange for transfer of

5  members to in-network hospitals for post-stabilization services; (g) directing

6  whether and how to pay bills; (h) issuing remittance advices and explanations of

7  benefits on the bills; (i) communicating with providers regarding bills and services;

8  (j) communicating with members regarding the bills and services; and (k) issuing

9  payment.  NorthBay is informed and believes that Blue Shield is in possession,

10  custody, or control for the Other Payors of all facts, information and data concerning

11  and related to the authorization, processing, pricing and payment of all bills

12  submitted by NorthBay for services rendered to patients whose plans are

13  administered by Blue Shield.

14  **C.    ERISA Plans**

15          7.      NorthBay is informed and believes that some of the Other Payors are

16  plans regulated by the Employee Retirement Income Security Act of 1974

17  ("ERISA").

18          8.      Plaintiff is further informed and believes that, with respect to self-

19  funded ERISA plans which have not specifically designated a plan administrator,

20  Blue Shield functions as the *de facto* plan administrator, or as the co-administrator

21  because, *inter alia*, it has provided plan documents to participants, received benefit

22  claims, evaluated and processed those claims, made benefit determinations, made

23  and administered benefit payments, and handled appeals of benefit determinations.

24  Moreover, NorthBay is informed and believes that, even with respect to self-funded

25  ERISA plans which have not specifically designated a plan administrator, Blue

26  Shield has been specifically designated as the claims administrator, and has been

27  delegated the responsibilities described above.  Specifically, with respect to all of

28  the ERISA claims at issue herein, including with respect to self-funded plans which

1  have not been named as defendants in this action, NorthBay is informed and

2  believes that the Blue Shield:

3          a)      drafted and provided plan members with plan documents;

4          b)      operated a centralized verification and authorization telephone

5  number which handled calls for members of the self-funded plans, including plans

6  that have not been named as defendants in this Complaint;

7          c)      authorized NorthBay to provide medical services to beneficiaries

8  of the ERISA plans;

9          d)      received and processed electronic bills from NorthBay for claims

10  for members of the self-funded plans, including plans that are not named as

11  defendants in this Complaint;

12          e)      communicated with NorthBay on behalf of the ERISA plans (and

13  additional self-insured plans that are not named as defendants) regarding

14  authorization of surgical procedures;

15          f)      issued remittance advices and EOBs;

16          g)      priced claims for the self-insured ERISA plans;

17          h)      communicated with NorthBay with respect to the processing of

18  claims on behalf of the self-insured plans;

19          i)      processed appeals, and sent appeal response letters; and

20          j)      issued payment.

21      9.      Accordingly, Blue Shield is a proper ERISA defendant because it

22  "effectively controlled the decision whether to honor or to deny a claim...."  *Cyr v.*

23  *Reliance Life Ins. Co.,* 642 F.3d 1202, 1204 (9th Cir. 2011) (en banc).

24  **D.    DOE Defendants**

25      10.     NorthBay does not know the true names or capacities, whether

26  individual, corporate, associate, or otherwise, of defendant DOES 1 through 50, and

27  therefore designates those defendants by such fictitious names.  Each of the

28  defendants sued herein as a DOE is legally responsible in some manner for the

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL.: (310) 551-8111 • FAX: (310) 551-8181

1  events and happenings referred to and proximately caused the injuries suffered by

2  plaintiff.  NorthBay will amend this complaint to allege the true names and

3  capacities of these DOES when the same becomes known to NorthBay.  DOES and

4  Blue Shield are collectively referred to herein as "Defendants."

### III.

### ALLEGATIONS COMMON TO ALL CLAIMS

7       11.     It is standard in the health care industry that when hospitals, such the

8  NorthBay Hospitals, enter into written contracts with a health plan, such as Blue

9  Shield, the hospital agrees to accept reimbursement that is discounted from the

10  hospital's total billed charges in exchange for the benefits of being a "contracted

11  provider" (*i.e.*, a provider with a written contract with the plan).  These benefits

12  include an increased volume of business because the health plan provides financial

13  and other incentives for its members to receive their medical care at the contracted

14  provider, such as advertising that the provider is "in-network," and allowing the

15  members to pay lower co-payments and deductibles to use the contracted provider

16  for their non-emergency services.

17       12.     Conversely, when hospitals, such as the NorthBay Hospitals, do not

18  have a written contract with a health plan, the hospitals receive less business from

19  the plan, as the health plan discourages its members to receive their non-emergency

20  care at the out-of-network providers.  Because, in such circumstances, the health

21  plan is discouraging its members from receiving their care at the non-contracted

22  hospitals, the non-contracted hospitals have no obligation to reduce their charges,

23  and are entitled to receive payment based on their charges for the services rendered.

24  The health plan is not entitled to a discount from the hospitals' total billed charges

25  because it is not providing the hospitals the benefits of an increased patient volume

26  that results from being an in-network provider.

27       13.     In non-contracted situations, Blue Shield has drastically underpaid

28  hospitals for the medically necessary services they have provided to the members

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL: (310) 551-8111 • FAX: (310) 551-8181

and insureds of Blue Shield and its affiliates. Blue Shield has used flawed methodologies and systems to unilaterally determine what amounts hospitals should charge for their services.

14. NorthBay is informed and believes that Blue Shield's systems for paying out-of-network claims are flawed, that Blue Shield improperly manipulates the data in its systems to calculate incorrect and inappropriately low amounts in paying hospital claims, and that Blue Shield's systems and methods for calculating the rates for non-contracted providers violates California law.

15. Until November 30, 2016, NorthBay had a written contract with Blue Shield in which Blue Shield encouraged its members and the Other Payors' members to seek their medical services at NorthBay and NorthBay in return agreed to discount its rates to Blue Shield. After the written agreement terminated, Blue Shield began discouraging its members from obtaining the medical services at NorthBay. Yet, despite doing so, Blue Shield has implemented a payment methodology that allows Blue Shield to unilaterally discount NorthBay's rates.

16. The NorthBay Hospitals, however, are legally obligated to provide medically necessary emergency health care services to individuals[1] who are insured with Blue Shield or the Other Payors. The NorthBay Hospitals are also obligated to provide "post-stabilization services" (*i.e.,* services after a patient's emergency medical condition was stabilized) to these members if Blue Shield chooses not to transfer its members to contracted hospitals.

17. For the patient claims at issue, the NorthBay Hospitals provided medical services to members and insureds of Blue Shield and the Other Payors,

_____

[1] NorthBay is not attaching the list of the claims at issue to this Complaint to protect patient privacy. NorthBay will, in the course of discovery and where appropriate, provide information on the relevant claims to Blue Shield in a confidential manner, and to the Court under seal, as needed.

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL.: (310) 551-8111 • FAX: (310) 551-8181

1   including but not limited to emergency services, inpatient services following

2   admission from the NorthBay Hospitals' emergency rooms and outpatient services.

3       18.    For all patients' claims at issue, once the patient's insurance is

4   identified, the NorthBay Hospitals confirmed that the patient was an eligible

5   member of one of Blue Shield's plans or one of the Other Payors' plans

6   administered by Blue Shield by contacting Blue Shield by phone or facsimile.

7       19.    The reason the NorthBay Hospitals contacted Blue Shield when a

8   patient who entered through the emergency room required further post-stabilization

9   care is that the NorthBay Hospitals are informed and believe that Blue Shield either

10  insured the patient or administered coverage for the Other Payors.  The insurance

11  cards issued to patients by Blue Shield do not state whether Blue Shield is the

12  insurer or the administrator of coverage, or both, leaving it unclear to the NorthBay

13  Hospitals.  NorthBay is informed and believes that the Blue Shield system is set up

14  to give the patients and the providers the impression that the patients have coverage

15  through Blue Shield, and to direct communications about coverage through Blue

16  Shield, so that Blue Shield becomes the front for all claims.

17      20.    The NorthBay Hospitals' billed charges are reasonable and customary

18  for non-contracted services.

## IV.

## ERISA CLAIMS

21      21.    People who receive their health insurance through a private

22  employment based benefit plan are typically participants or beneficiaries of plans

23  governed by the federal Employee Retirement Income Security Act of 1974

24  ("ERISA"), 29 U.S.C. § 1001 *et seq*.  Sometimes the ERISA plans are fully insured

25  by health insurers such as Blue Shield.  Sometimes the plan is self-funded, in which

26  case the plan is financially responsible for the claims arising from that plan.

27      22.    NorthBay is informed and believes that Blue Shield is the ERISA plan

28  administrator and ERISA fiduciary for the ERISA claims at issue in this Complaint,

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL.: (310) 551-8111 • FAX: (310) 551-8181

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL.: (310) 551-8111 • FAX: (310) 551-8181

1    or is otherwise a proper ERISA defendant because it "effectively controlled the

2    decision whether to honor or to deny a claim . . . ." *Cyr v. Reliance Life Ins. Co.*,

3    642 F.3d 1202, 1204 (9th Cir. 2011).

4        23.    Upon information and belief, with respect to the self-insured ERISA

5    plans at issue herein, the Other Payors enter into agreements with Blue Shield to

6    perform administrative and other key responsibilities such as (a) certifying or

7    authorizing NorthBay's provision of services to members; (b) receiving NorthBay's

8    claims; (c) pricing the claims; (d) processing and administering the claims and

9    appeals; (e) approving or denying the claims; (f) deciding not to transfer the

10    members to in-network hospitals; (g) directing whether and how to pay the claims;

11    (h) issuing remittance advices and explanations of benefits; (i) communicating with

12    NorthBay regarding the claims and services; (j) communicating with members

13    regarding the claims and services; and (k) in many instances issuing payment.  On

14    information and belief, these agreements are structured such that Blue Shield has a

15    financial incentive to keep benefit costs to the funding entity low.

16        24.    On information and belief, Blue Shield functions as an ERISA plan

17    administrator with respect to those claims upon which they have exercised delegated

18    authority to provide plan documents to participants and beneficiaries, receive benefit

19    claims, evaluate and process those claims, review the terms of the plan, make initial

20    benefit determinations, make and administer benefit payments, handle appeals of

21    benefit determinations, and serve as the primary point of contact for members and

22    providers to communicate regarding benefits and benefit determinations.  In

23    carrying out these ERISA plan administrator functions, Blue Shield possesses

24    authority and fiduciary discretion to manage and administer the Other Payors'

25    ERISA plans.

26        25.    ERISA plans, whether fully-insured or self-funded, typically contain

27    provisions for paying non-contracted hospitals at the usual and customary rate.  The

28    language varies from plan to plan, and may be described as the "Usual, Customary

1   and Reasonable" rate, the "Reasonable and Customary" amount, the "Usual and

2   Customary" amount, the "Reasonable Charge," the "Prevailing Rate," the "Usual

3   Fee," the "Competitive Fee," or some other similar phrase.  In the context of the

4   healthcare industry these phrases are all synonymous with the usual and customary

5   rate.  Upon information and belief, no provisions in Blue Shield's benefit plans,

6   whether in their Summary Plan Descriptions or Evidences of Coverage, justified the

7   failure to pay the usual and customary rate for services charged by the NorthBay

8   Hospitals.

9        26.    The formal mechanism for a health plan or plan administrator to

10  explain why a claim is denied (meaning that the allowed amount is anything less

11  than full billed charges) is an explanation of benefits ("EOB").  Blue Shield was

12  required to issue EOBs in conformance with 29 U.S.C. § 1133 as implemented by

13  29 C.F.R. 2560.503-1.  Specifically, under 29 C.F.R. § 2560.503-1(g), they were

14  required to:

15           . . . provide a claimant with written or electronic
             notification of any adverse benefit determination.  Any
16           electronic notification shall comply with the standards
             imposed by 29 CFR 2520.104b-1(c)(1)(i), (iii), and (iv).
17           The notification shall set forth, in a manner calculated to
             be understood by the claimant –

18           (i)    The specific reason or reasons for the adverse
19           determination;

20           (ii)    Reference to the specific plan provisions on which
             the determination is based;
21
             (iii)    A description of any additional material or
22           information necessary for the claimant to perfect the claim
             and an explanation of why such material or information is
23           necessary;

24           (iv)    A description of the plan's review procedures and
             the time limits applicable to such procedures, including a
25           statement of the claimant's right to bring a civil action
             under section 502(a) of the Act following an adverse
26           benefit determination on review;

27           (v)    In the case of an adverse benefit determination by a
             group health plan or a plan providing disability benefits,
28

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL.: (310) 551-8111 • FAX: (310) 551-8181

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL: (310) 551-8111 • FAX: (310) 551-8181

(A)    If an internal rule, guideline, protocol, or other similar criterion was relied upon in making the adverse determination, either the specific rule, guideline, protocol, or other similar criterion; or a statement that such a rule, guideline, protocol, or other similar criterion was relied upon in making the adverse determination and that a copy of such rule, guideline, protocol, or other criterion will be provided free of charge to the claimant upon request; or

(B)    If the adverse benefit determination is based on a medical necessity or experimental treatment or similar exclusion or limit, either an explanation of the scientific or clinical judgment for the determination, applying the terms of the plan to the claimant's medical circumstances, or a statement that such explanation will be provided free of charge upon request.

(vi)    In the case of an adverse benefit determination by a group health plan concerning a claim involving urgent care, a description of the expedited review process applicable to such claims. Under the federal Emergency Medical Treatment and Active Labor Act ("EMTALA"), Social Security Act § 1867(a), and California Health and Safety Code § 1317, the NorthBay Hospitals have a statutory duty to provide emergency services and care to all individuals, including members and insureds of Blue Shield and the Other Payors who present themselves at its emergency department with potentially life-threatening conditions, without regard to the patients' ability to pay or their possession of insurance benefits.

27.    When each of the relevant claims was denied, Blue Shield gave a variety of explanations on the EOBs for why the claims would not be properly paid, but Blue Shield's explanations were vague, and at times, nonsensical.  Blue Shield's EOBs did not comply with the ERISA regulations, including not stating the specific and/or actual reasons for its failure to pay claims at the proper rate, providing any of the details required by the law (including the specific plan provisions purportedly justifying its failure to pay the usual and customary rate), or requesting more information if needed as required by law.

28.    The same is true for appeals.  While Blue Shield's failure to comply with the ERISA regulations when issuing EOBs means that the NorthBay Hospitals had no duty to appeal, the NorthBay Hospitals did in some cases file appeals to which Blue Shield's responses were equally deficient.  Appeal response letters are

subject to parallel requirements as EOBs.  29 C.F.R. § 2560.503-1(j).  *See Ellis v. Met. Life Ins. Co.*, 126 F.3d 228, 237 (4th Cir. 1997) ("The notice requirement for the decision on review must be every bit as explicit as an initial denial notice in terms of providing specific reasons for the continued denial and specific references to the pertinent plan provisions.").  Yet, Blue Shield's appeal denial letters were just as vague – and in many cases, nonsensical – as were their EOBs.

29.    As a condition of admission, every patient treated at the NorthBay Hospitals signed an Assignment of Benefits form agreeing to, *inter alia*, assign his or her health insurance benefits to the NorthBay Hospitals.  This form gives the NorthBay hospitals standing to assert the claims of its patients against their health plans.

30.    Blue Shield did not deny claims on the basis that the NorthBay Hospitals had obtained an inadequate assignment of benefits, or that the NorthBay Hospitals were not otherwise a valid assignee of benefits with respect to the patients whose bills are at issue here.

31.    To the extent there are any underpayments that were not fully appealed, in light of Blue Shield's grievous breach of its obligations (including, but not limited to, Blue Shield's insufficient EOBs and RAs), and systematic failures, the ERISA regulations provide that the claimants "shall be deemed to have exhausted the administrative remedies under the plan . . . ."  29 C.F.R. § 2560.503-1(l).  Similarly, for the same reason, any appeals by the NorthBay Hospitals would have been futile.

32.    In light of Blue Shield's breaches, a *de novo* standard of review should be applied here.  But even if some deference were accorded to Blue Shield's decision not to adjudicate and pay the post-termination rate, that decision is clearly erroneous, arbitrary and capricious.

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL.: (310) 551-8111 • FAX: (310) 551-8181

FIRST AMENDED COMPLAINT

# V.

## EMERGENCY ROOM CLAIMS

33.    Under the federal Emergency Medical Treatment and Active Labor Act ("EMTALA"), Social Security Act § 1867(a), and California Health and Safety Code § 1317, the NorthBay Hospitals have a statutory duty to provide emergency services and care to all individuals, including members and insureds of Blue Shield and the Other Payors who present themselves at its emergency department with potentially life-threatening conditions, without regard to the patients' ability to pay or their possession of insurance benefits.

34.    Therefore, by law, when members or insureds of Blue Shield or the Other Payors present themselves to the NorthBay Hospitals' emergency rooms, the NorthBay Hospitals must treat the individual without regard to the person's ability to pay and without first obtaining insurance verification or authorization to provide the treatment.

35.    The NorthBay Hospitals performed duties that are the responsibility of Blue Shield by providing medical care to their members and insureds and members and insureds of the Other Payors that was immediately necessary to prevent serious bodily harm to or suffering by these members and/or insureds. The NorthBay Hospitals provided these immediately necessary medical services with the intent to charge its customary rates for its services.

36.    Where an implied-in-law agreement exists, and no specific payment terms have been agreed upon or are in dispute, payment for the services is based upon the reasonable and customary fair market value.

37.    The NorthBay Hospitals' billed charges are reasonable and customary under California law.

38.    Members and insureds of Blue Shield and the Other Payors sought emergency treatment at the NorthBay Hospitals for various serious and emergent injuries, heart attacks or other emergent heart conditions, emergent or urgent

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL.: (310) 551-8111 • FAX: (310) 551-8181

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL.: (310) 551-8111 • FAX: (310) 551-8181

1  pregnancy deliveries, complications suffered after previous medical procedures, etc.

2  NorthBay is informed and believes that, due to the unpredictable nature of

3  emergency care claims, every day that the NorthBay Hospitals and Blue Shield

4  remain "out of contract," members and/or insureds of Blue Shield and the Other

5  Payors will continue to arrive at the NorthBay Hospitals' emergency rooms in need

6  of emergency treatment.

7       39.    After the NorthBay Hospitals provided emergency care to members

8  and/or insureds of Blue Shield and the Other Payors, the NorthBay Hospitals

9  submitted claims to Blue Shield to be processed for payment.

10      40.    Blue Shield has failed to reimburse the NorthBay Hospitals properly

11  for emergency health care provided to its respective members and/or insureds and

12  those of the Other Payors.

13      41.    Moreover, NorthBay is informed and believes that many of the Other

14  Payors' patients' insurance contracts or plans with Blue Shield require Blue Shield

15  to pay emergency health care providers based upon a percentage of their fully billed

16  charges, and not based upon a reasonable and customary rate.  Nevertheless, as

17  stated above the NorthBay Hospitals' charges are reasonable and customary.

**VI.**

**POST-STABILIZATION CLAIMS**

20      42.    The law requires Blue Shield to pay for post-stabilization care for its

21  members and for the Other Payors' members.  NorthBay is informed and believes

22  that Defendants' plans or contracts with their members and with the Other Payors

23  require Blue Shield to pay for post-stabilization care for those members whose

24  claims are regulated under the Knox-Keene Act.

25      43.    California law, discussed *infra*, and the parties' actions support an

26  implied-in-law and/or an implied-in-fact contract between the NorthBay Hospitals

27  and Blue Shield when the NorthBay Hospitals provide post-stabilization services to

28  members or insureds of Blue Shield or the Other Payors.

44.     As soon as practical after a patient presents to the emergency room, the NorthBay Hospitals contacts Blue Shield to let it know that they have received a Blue Shield member for treatment.  In addition, after the patient's emergency condition is stabilized, the NorthBay Hospitals contacts Blue Shield to determine whether Blue Shield, on its own behalf or as agent for the Other Payors, wants to transfer the patient to another in-network hospital, or whether the NorthBay Hospitals are authorized to provide the post-stabilization services to the patient.

45.     In most cases, Blue Shield chooses not to transfer its members or members of the Other Payors who required post-stabilization care from the NorthBay Hospitals to an in-network hospital, and instead either expressly authorizes the NorthBay Hospitals to provide the post-stabilization care to the member, or fails to respond within 30 minutes, in which case the post-stabilization services are deemed authorized by law.  At the time that Blue Shield, for itself or as the agent of the Other Payors made the decision not to transfer patients to in-network providers, Blue Shield knew what the NorthBay Hospitals charged for their services.

46.     The NorthBay Hospitals, like all California hospitals, annually provides a list of all of their charges (called a "Charge Description Master" or "CDM") to the California Office of Statewide Health Planning and Development ("OSHPD"), and OSHPD posts all California hospitals' CDMs on its website.  In addition, Blue Shield has for many years received, and is continuously receiving, the NorthBay Hospitals' claims which contain the rates that the NorthBay Hospitals charge for their various services.  Defendants knows what NorthBay Hospitals charge for their services because they have years of experience seeing the hospitals' charges. Having chosen not to transfer the patients to in-network hospitals, each of the Defendants are required to pay the NorthBay Hospitals their charges for the services provided to their respective members and/or insureds, and impliedly agreed to pay the charges.  If Defendants did not want to pay the NorthBay Hospitals' charges for

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL.: (310) 551-8111 • FAX: (310) 551-8181

1  the post-stabilization care, they could have, and should have, transferred their

2  members to contracted hospitals.

3      47.  Members who entered the hospital through the emergency room and

4  required post-stabilization care did not choose to receive their emergency care and

5  post-stabilization care at a non-participating provider.  The patients came through

6  the emergency room at the time of their life-threatening accident or illness, and Blue

7  Shield chose not to transfer these patients to an in-network provider after the

8  patient's emergency condition had stabilized.

9      48.  After the NorthBay Hospitals provided post-stabilization care to

10  members and/or insureds of Blue Shield and/or the Other Payors, the NorthBay

11  Hospitals submitted claims to Blue Shield to be processed for payment.

12      49.  Blue Shield has failed to reimburse the NorthBay Hospitals properly

13  for post-stabilization health care provided to its members and/or insureds and/or

14  those of the Other Payors.

**VII.**

**MISREPRESENTATIONS**

17      50.  As explained above, the NorthBay Hospitals did not have contracts

18  with Blue Shield or the Other Payors governing the rates the NorthBay Hospitals

19  could charge or the payments Blue Shield was required to make for services

20  provided to patients treated at the NorthBay Hospitals.  Notwithstanding its lack of a

21  contract with the NorthBay Hospitals, Blue Shield falsely represented in written

22  communications to the NorthBay Hospitals, including in remittance advice and

23  explanation of benefit forms ("EOBs"), that Blue Shield did not need to pay the

24  charges submitted by the NorthBay Hospitals because the "CHARGES EXCEED

25  CONTRACTED AGREEMENT."  These statements were false because the

26  NorthBay Hospitals were neither a contracted provider, nor providing services for

27  which any contracted rates would apply.  Blue Shield knew or should have known

28  that the NorthBay Hospitals were not subject to any contract and, therefore, knew or

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL.: (310) 551-8111 • FAX: (310) 551-8181

1  should have known that its representations that the NorthBay Hospitals were subject
2  to contracted rates were false.

3      51.    NorthBay is informed and believes that Blue Shield knowingly made
4  these misrepresentations in written correspondence like remittance advice and EOBs
5  in order to avoid paying the monies owed to the NorthBay Hospitals.  As a result,
6  Blue Shield has deliberately and drastically underpaid hospitals for the medically
7  necessary services they have provided to the members and insureds of Blue Shield
8  and the Other Payors.

## COUNT ONE

### (Enforcement Under 29 U.S.C. § 1132(a)(1)(B)
### For Failure to Pay ERISA Plan Benefits)

(Against BSC Life, BSC, and DOES 1 Through 50)

13     52.    NorthBay incorporates all allegations set forth in the above paragraphs
14 as though fully set forth herein.

15     53.    NorthBay alleges this claim for relief in connection with claims for
16 treatment rendered to patients covered by self-funded health benefits plans governed
17 by ERISA.  This is a claim to recover benefits, enforce rights and clarify rights to
18 benefits under 29 U.S.C. § 1132(a)(1)(B).

19     54.    NorthBay has standing to pursue these claims as an assignee of its
20 patients' benefits under the ERISA plans.  As a condition of admission, every
21 patient treated at the NorthBay Hospitals signed an Assignment of Benefits form
22 agreeing to, *inter alia*, assign his or her health insurance benefits to NorthBay.  In
23 *Misic v. Building Services Employees Health & Welfare Trust*, 789 F.2d 1374, 1379
24 (9th Cir. 1986), the Ninth Circuit determined that a provider who is "an assignee of
25 [ERISA plan] beneficiaries pursuant to assignments valid under ERISA, has
26 standing to assert the claims of his assignors" against their health plan.  Therefore,
27 NorthBay has standing to pursue this cause of action as an assignee of its patients'
28 benefits under health benefit plans governed by ERISA.

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL.: (310) 551-8111 • FAX: (310) 551-8181

55.   NorthBay's rights derived from the assignments are separate and apart from NorthBay's independent direct rights under the facts and law alleged above and in the other causes of action.

56.   The formal mechanism for a health plan or plan administrator to explain why a claim is denied (meaning that the allowed amount is anything less than full billed charges) is an explanation of benefits ("EOB").  Blue Shield was required to issue EOBs in conformance with 29 U.S.C. § 1133 as implemented by 29 C.F.R. 2560.503-1.  Specifically, under 29 C.F.R. § 2560.503-1(g), it was required to:

> . . . provide a claimant with written or electronic notification of any adverse benefit determination.  Any electronic notification shall comply with the standards imposed by 29 CFR 2520.104b-1(c)(1)(i), (iii), and (iv).  The notification shall set forth, in a manner calculated to be understood by the claimant –
>
> (i)   The specific reason or reasons for the adverse determination;
>
> (ii)   Reference to the specific plan provisions on which the determination is based;
>
> (iii)   A description of any additional material or information necessary for the claimant to perfect the claim and an explanation of why such material or information is necessary;
>
> (iv)   A description of the plan's review procedures and the time limits applicable to such procedures, including a statement of the claimant's right to bring a civil action under section 502(a) of the Act following an adverse benefit determination on review;
>
> (v)   In the case of an adverse benefit determination by a group health plan or a plan providing disability benefits,
>
> (A)   If an internal rule, guideline, protocol, or other similar criterion was relied upon in making the adverse determination, either the specific rule, guideline, protocol, or other similar criterion; or a statement that such a rule, guideline, protocol, or other similar criterion was relied upon in making the adverse determination and that a copy of such rule, guideline, protocol, or other criterion will be provided free of charge to the claimant upon request; or
>
> (B)   If the adverse benefit determination is based on a

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL.: (310) 551-8111 • FAX: (310) 551-8181

medical necessity or experimental treatment or similar exclusion or limit, either an explanation of the scientific or clinical judgment for the determination, applying the terms of the plan to the claimant's medical circumstances, or a statement that such explanation will be provided free of charge upon request.

(vi)    In the case of an adverse benefit determination by a group health plan concerning a claim involving urgent care, a description of the expedited review process applicable to such claims.

57.    Strict compliance with these requirements is now necessary, and only *de minimis* errors will be excused.  29 C.F.R. § 2590.715-2719(b)(2)(ii)(F)(1).  The errors here were far from *de minimis*.[2]

58.    When each of the relevant claims was denied, Blue Shield gave a variety of explanations on the EOBs for why the claims would not be properly paid, but Blue Shield's explanations were vague, and at times, nonsensical.  For example, Blue Shield's EOB's explained that certain claims would not be properly paid because the "CHARGES EXCEED CONTRACTED AGREEMENT," even though there was no contract between Blue Shield and NorthBay governing the claims at issue.

59.    Blue Shield's EOBs did not comply with the ERISA regulations, including not stating the specific and/or actual reasons for its failure to pay claims at the proper rate, providing any of the details required by the law, or requesting more information if needed as required by law.

60.    To the extent there are any claims not fully appealed, in light of Blue Shield's breach of its obligations (including, but not limited to, Aetna's insufficient

---

[2]  "*De minimis*" errors are ones that (i) cause no prejudice or harm, (ii) were for good cause, (iii) due to matters beyond the plan's control, (iv) occurred in the context of an ongoing, good faith exchange of information between the plan and the claimant, and (v) is not part of a pattern or practice of violations by the plan.  29 C.F.R. § 2590.715-2719(b)(2)(ii)(F)(2).

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL: (310) 551-8111 • FAX: (310) 551-8181

1  EOBs), and systematic failures, nonetheless, the ERISA regulations provide that the

2  claimants "shall be deemed to have exhausted the administrative remedies under the

3  plan . . . ."  29 C.F.R. § 2560.503-1(l).  Similarly, because of Blue Shield's

4  nonsensical explanations for the denials of NorthBay's claims in its EOBs, any

5  appeals by NorthBay would have been futile.

6      61.    NorthBay is informed and believes that the ERISA plans at issue in this

7  case required Blue Shield and the ERISA plans to pay NorthBay customary and

8  reasonable rates for the emergency and post-emergency services that NorthBay has

9  provided to the ERISA plan members.

10     62.    Blue Shield has breached these ERISA plan provisions and has failed to

11  provide the ERISA plan members the benefits due to them under the terms of their

12  plans.  As the assignee of those benefits, NorthBay has the right to recover the

13  benefits due to the members under the plans.

14     63.    As a result of Blue Shield's underpayment of benefits, it is liable to

15  NorthBay for the difference between what should have been paid and the amounts

16  that were actually paid, plus applicable interest and attorneys' fees.

17                          **COUNT TWO**

18            **(Enforcement Under 29 U.S.C. § 1132(a)(3)**

19                **For Failure to Properly Handle Claims)**

20            (Against BSC Life, BSC, and DOES 1 Through 50)

21     64.    NorthBay incorporates all allegations set forth in the above paragraphs

22  as though fully set forth herein.

23     65.    This claim is alleged by NorthBay for relief in connection with claims

24  for treatment rendered to patients covered by a health benefits plan governed by

25  ERISA.  This is a claim pursuant to 29 U.S.C. § 1132(a)(3), to redress Defendants'

26  failures to comply with 29 U.S.C. § 1133 and the implementing regulations set forth

27  at 29 C.F.R. § 2560.503-1.

28

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL.: (310) 551-8111 • FAX: (310) 551-8181

66.     As set forth above, NorthBay has standing to pursue these claims as an assignee of its patients' benefits under health benefit plans governed by ERISA.

67.     NorthBay, as assignee of ERISA plan participants and beneficiaries, is entitled to certain procedural protections concerning the manner in which its claims are handled, including the specific reasons for the denial of claims and a "full and fair review" of all denied claims.  *See* 29 U.S.C. § 1133.

68.     When NorthBay received Explanations of Benefits or Remittance Advices from Blue Shield, these notices failed to disclose the reasons for the benefits determination with sufficient specificity.

69.     Similarly, Blue Shield failed to comply with the procedural requirements of ERISA, the Secretary of Labor's implementing regulations, or, upon information and belief, the terms of the respective ERISA plans at issue.  Blue Shield denied NorthBay the opportunity for a "full and fair review" of denied claims, *inter alia*, by:

      a.     Failing to fully disclose the data and methodology used to determine the rates Blue Shield would agree to pay;

      b.     Failing to disclose with specificity the reasons for the adverse determinations;

      c.     Failing to make reference to the specific plan provisions on which the benefit determinations or review determinations were based;

      d.     Failing to provide NorthBay with a sufficient description of the plan's review procedures;

2.     Blue Shield's failure to comply with the procedural requirements of ERISA, the Secretary of Labor's implementing regulations, the terms of the Other Payors' respective ERISA plans, and federal common law results in the administrative remedies of NorthBay being deemed exhausted.  *See* 29 C.F.R. § 2560.503-1(l).

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL.: (310) 551-8111 • FAX: (310) 551-8181

3.    By reasons of the foregoing, NorthBay is entitled to a declaration by this Court that Defendants' actions as alleged herein are in violation of their duties and obligations under ERISA, and an injunction requiring Defendants to comply with their duties and obligations under ERISA, including calculating past and future benefits based on the terms of the Other Payors' respective ERISA plans.

## COUNT THREE

### (Breach of Implied-In-Law Contract – Emergency Claims)

(Against BSC Life, BSC, and DOES 1 Through 50)

70.    NorthBay incorporates all allegations set forth in the above paragraphs as though fully set forth herein.

71.    This Count applies to claims governed by state law.

72.    Under EMTALA and California Health and Safety Code § 1317, the NorthBay Hospitals have a statutory duty to provide emergency services to all individuals, including Blue Shield's members, who present themselves at its emergency room needing such services without regard to the individual's ability to pay or his or her possession of insurance benefits.

73.    BSC operates health care service plans that are regulated by the DMHC.  BSC must comply with Health and Safety Code § 1371.4(b) of the Knox-Keene Act, which states, in pertinent part:

> A health care service plan . . . shall reimburse providers for emergency services and care provided to its enrollees, until the care results in stabilization of the enrollee ... As long as federal or state law requires that emergency services and care be provided without first questioning the patient's ability to pay, a health care service plan shall not require a provider to obtain authorization prior to the provision of emergency services and care necessary to stabilize the enrollee's emergency medical condition.

74.    Moreover, the Patient Protection and Affordable Care Act, effective March 23, 2010, imposes on insurers a legal obligation to cover emergency services provided at non-contracted hospitals:

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL.: (310) 551-8111 • FAX: (310) 551-8181

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL.: (310) 551-8111 • FAX: (310) 551-8181

If a group health plan, or a health insurance issuer offering group or individual health insurance issuer, provides or covers any benefits with respect to services in an emergency department of a hospital, the plan or issuer **shall cover emergency services** (as defined in paragraph (2)(B))--

(A) **without the need for any prior authorization determination**;

(B) whether the health care provider furnishing such services is a participating provider with respect to such services;

(C) in a manner so that, if such services are provided to a participant, beneficiary, or enrollee--

> (i) **by a nonparticipating health care provider with or without prior authorization**; …

42 U.S.C.A. § 300gg-19a (emphasis added).  The PPACA sets out "essential health benefits" that plans must cover, which "shall include at least the following general categories and the items and services covered within the categories: . . . . (B) **Emergency services**. (C) **Hospitalization**. . . ."  42 U.S.C.A. § 18022(b) (emphasis added).  Therefore, under the PPACA, Blue Shield has a legal duty to pay hospitals, like NorthBay, for the emergency and post-emergency hospitalization services provided to its members.

The California's Insurance Code was amended to conform to the PPACA. The Insurance Code requires insurance companies, like BSC Life, to cover emergency services.

(a) A group or individual health insurance policy issued, amended, or renewed on or after January 1, 2014, that provides or covers any benefits with respect to services in an emergency department of a hospital **shall cover emergency services** as follows: …

A) By a **nonparticipating health care provider** with or without prior authorization; or

(B)(i) The services will be provided **without imposing any requirement under the policy for prior authorization** of services or any limitation on coverage where the provider of services does not have a contractual relationship with the insurer for the providing of services that is more restrictive than the requirements or limitations that apply to emergency department services received from providers who do have such a contractual relationship with the insurer . . . .

Ins. Code § 10112.7 (emphasis added).  Likewise, it was amended effective January 1, 2013 to require insurance plans to "include coverage for essential health benefits pursuant to PPACA and as outlined in this section[:] . . . . **emergency services, hospitalization**."  Ins. Code § 10112.27(a)(1) (emphasis added).  Therefore, under the Insurance Code, BSC Life had a legal duty to pay NorthBay for the emergency and post-emergency services provided to its members.

75.    In *Bell v. Blue Cross of California* (2005) 131 Cal. App. 4th 211, 220, the California Supreme Court held that when a health plan member receives emergency care from a provider, an implied contract arises between non-contracted providers and a health plan which requires the health plan to reimburse the provider for the services rendered to the member.  The Supreme Court further held that "we do not agree that Blue Cross has unfettered discretion to determine unilaterally the amount it will reimburse a noncontracting provider, without any regard to the reasonableness of the fee."

76.    *Bell* also recognized the common law *quantum meruit* right of the NorthBay Hospitals to payment from third parties like Blue Shield who are responsible for the services provided, citing Restatement of Restitution § 114 entitled the "Performance of Another's Duty to A Third Person in an Emergency" which provides:

> A person who has performed the duty of another by supplying a third person with necessaries, although acting without the other's knowledge or consent, is entitled to restitution from the other therefor if:
>
> (a)  he acted unofficiously and with intent to charge therefor, and
>
> (b)  the things of services supplied were immediately necessary to prevent serious bodily harm to or suffering by such person.

77.    The NorthBay Hospitals have provided emergency services and care to thousands of patients who are members and/or insureds of Blue Shield.  The NorthBay Hospitals' services were immediately necessary to prevent serious bodily

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL.: (310) 551-8111 • FAX: (310) 551-8181

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL.: (310) 551-8111 • FAX: (310) 551-8181

harm to or suffering by such person.  NorthBay is informed and believes that these members pay premiums to Blue Shield in return for medical insurance and/or coverage under a health care service plan that includes coverage for emergency services and care.  Accordingly, in providing emergency services and care to Blue Shield's members, the NorthBay Hospitals intended to and have conferred a benefit on Blue Shield.  The NorthBay Hospitals provided such services with the reasonable expectation of payment from Blue Shield.  These laws support an implied-in-law contract whereby the NorthBay Hospitals were legally required to provide emergency services and care to Blue Shield's members, upon which Blue Shield became legally required to pay the NorthBay Hospitals for such services at a *quantum meruit* rate for such services.

78.    The NorthBay Hospitals performed duties that are the responsibility of Blue Shield by providing emergency medical care its members and insureds.  The NorthBay Hospitals provided these immediately necessary medical services unofficiously and with the intent to charge its customary rates for its services.

79.    The DMHC has adopted regulations that define the amount that health care service plans such as BSC are obligated to pay non-contracted providers, such as the NorthBay Hospitals.  These regulations provide in pertinent part:

> (b) For contracted providers without a written contract and non-contracted providers, . . . the payment of the reasonable and customary value for the health care services rendered based upon statistically credible information that is updated at least annually and takes into consideration: (i) the provider's training, qualifications, and length of time in practice; (ii) the nature of the services provided; (iii) **the fees usually <u>charged</u> by the provider**; (iv) **prevailing provider rates <u>charged</u> in the general geographic area in which the services were rendered**; (v) other aspects of the economics of the medical provider's practice that are relevant; and (vi) any unusual circumstances in the case.

> (C) For non-emergency services provided by non-contracted providers to PPO and POS enrollees: the amount set forth in the enrollee's Evidence of Coverage

28 Cal. Code Regs. § 1300.71(a)(3)(B) AND (C) (emphasis added); *Gould v.*

*Workers' Comp. Appeals Board* (1992) 4 Cal.App.4[th] 1059, 1071.  These are the same criteria that California courts have established to determine *quantum meruit* amounts.

80.     Based upon these criteria, the NorthBay Hospitals' charges are reasonable and customary.

81.     The systems and methodology used by Blue Shield for calculating reasonable and customary amounts are not based on the criteria set out in California law, and do not calculate an accurate or fair amount due to the NorthBay Hospitals based upon their charges.

82.     Accordingly, there is now due, owing and unpaid from Blue Shield to the NorthBay Hospitals an amount to be proved at trial, plus applicable statutory interest.

## COUNT FOUR

**(For Breach of Implied-in-Law Contract – Post Stabilization Claims)**

(Against BSC Life, BSC, and DOES 1 Through 50)

83.     NorthBay incorporates all allegations set forth in the above paragraphs as though fully set forth herein.

84.     This Count applies to claims governed by state law.

85.     As stated above, after the NorthBay Hospitals have provided emergency care to Blue Shield's members, and the patient's medical condition has been stabilized, the NorthBay Hospitals contact Blue Shield (a) to inform Blue Shield that an individual who believes that he or she has coverage from Blue Shield has presented to the hospital for emergency services, (b) to verify that the individual is an eligible member of Blue Shield, and (c) to ask if Blue Shield wishes to transfer the patient, or, if not, to verify that the hospital is authorized to provide post-stabilization care.

86.     Section 1262.8(d)(2) of the Health and Safety Code requires BSC either to transfer the member to a contracted hospital or to authorize the post-stabilization

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL.: (310) 551-8111 • FAX: (310) 551-8181

1   care at the NorthBay Hospitals.  If BSC does not transfer the member, it is obligated

2   to pay the NorthBay Hospitals' charges for such post-stabilization care.  Health and

3   Safety Code section 1262.8(d)(2) provides:

4           If the health care service plan, or its contracting medical
            provider, does not notify the noncontracting hospital of its
5           decision pursuant to paragraph (1) within 30 minutes, the
            poststabilization care shall be deemed authorized, and the
6           health care service plan, or its contracting medical
            provider, shall pay **charges** for the care, in accordance
7           with the Knox-Keene Health Care Service Plan Act of
            1975
8
            (Chapter 2.2 (commencing with Section 1340) of Division
9           2) and any regulation adopted thereunder. (Emphasis
            added.)
10

11          87.     *Therefore*, under Health & Safety Code § 1262.8(d) after the NorthBay

12  Hospitals contact BSC to inform it of its member's presence at one of the NorthBay

13  Hospitals and in need of post-stabilization care, BSC has 30 minutes to inform the

14  NorthBay Hospitals of its decision to either authorize care or transfer the patient to

15  another hospital, or BSC is deemed by law to have authorized the post-stabilization

16  care and is required to pay the hospital's charges for the care.

17          88.     Health and Safety Code section 1371.4 (d) provides in pertinent part:

18          If there is a disagreement between the health care service
            plan and the provider regarding the need for necessary
19          medical care, following stabilization of the enrollee, the
            plan shall assume responsibility for the care of the patient
20          either by having medical personnel contracting with the
            plan personally take over the care of the patient within a
21          reasonable amount of time after the disagreement, or by
            having another general acute care hospital under contract
22          with the plan agree to accept the transfer of the patient as
            provided in Section 1317.2, Section 1317.2a, or other
23          pertinent statute. …  If the health care service plan fails to
            satisfy the requirements of this subdivision, further
24          necessary care shall be deemed to have been authorized by
            the plan.  Payment for this care may not be denied.
25

26          89.     In those cases where BSC's members required post-stabilization

27  inpatient care, BSC chose not to transfer the patient from the NorthBay Hospitals to

28  another hospital, but instead authorized the NorthBay Hospitals to provide the post-

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL.: (310) 551-8111 • FAX: (310) 551-8181

1    stabilization care.

2    90.    Additionally, BSC Life and BSC are required to pay for health care

3    services that they have authorized.  Specifically, Health and Safety Code § 1371.8

4    and Insurance Code § 796.04 respectively provide, in pertinent part:

> A health care service plan [or insurer] that authorizes a
> specific type of treatment [for services covered under a
> policyholder's contract or plan] by a provider shall not
> rescind or modify this authorization after the provider
> renders the health care service in good faith and pursuant
> to the authorization.

9    91.    In light of these authorities, and the conduct of the parties, there existed

10    an implied-in-law contract whereby the NorthBay Hospitals were required to

11    provide post-stabilization care to Blue Shield's members, and Blue Shield agreed,

12    and was required, to pay the NorthBay Hospitals for such services at their billed

13    charges rate.

14    92.    As alleged above, the NorthBay Hospitals' charges for their services

15    are reasonable and customary.

16    93.    At the time that Blue Shield decided not to transfer the post-

17    stabilization patients to other hospitals, Blue Shield knew of the rates that the

18    NorthBay Hospitals charge for their services.  The NorthBay Hospitals' charges are

19    publicly available on OSHPD's website, and Blue Shield had received, and was

20    continuously receiving, the NorthBay Hospitals' claims which contained the rates

21    that the NorthBay Hospitals charged for their various services.  If Blue Shield did

22    not want to pay the rates that the NorthBay Hospitals charged for their services,

23    Blue Shield could have, and should have, transferred their members to hospitals that

24    had contracts with Blue Shield.  Having chosen not to transfer their members to in-

25    network hospitals, Blue Shield agreed to pay the NorthBay Hospitals at the rates

26    they charges for their services.

27    94.    At no time did the NorthBay Hospitals agree to accept payments for

28    post-stabilization services at rates lower than its full billed charges.  The NorthBay

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL.: (310) 551-8111 • FAX: (310) 551-8181

1   Hospitals appealed all the underpaid claims informing Blue Shield that it expects to

2   be paid its full billed charges for the services it has provided to Blue Shield's

3   members.  Blue Shield has refused to provide any additional payment on the claims.

4      95.   The NorthBay Hospitals have performed all of the obligations required

5   of them under its implied-in-law contracts with Blue Shield.

6      96.   The NorthBay Hospitals have demanded that Blue Shield pay for the

7   medical services they have provided to Blue Shield's members, and have sent claim

8   information to Blue Shield for payment.  The NorthBay Hospitals have demanded

9   payment from Blue Shield on numerous occasions, and has objected to Blue

10  Shield's unilateral decisions to reduce the amount of payment and/or deny payment

11  to the NorthBay Hospitals for the medical treatment provided to Blue Shield's

12  members.

13     97.   Accordingly, there is now due, owing and unpaid from Blue Shield to

14  the NorthBay Hospitals an amount to be proven at trial, plus applicable statutory

15  interest.

16                        **COUNT FIVE**

17   **(For Breach of Implied-In-Fact Contract – Post Emergency Services)**

18            (Against BSC Life, BSC. and DOES 1 Through 50)

19     98.   NorthBay incorporates all allegations set forth in the above paragraphs

20  as though fully set forth herein.

21     99.   This Count applies to claims governed by state law.

22     100.  The conduct between the NorthBay Hospitals and Blue Shield created

23  an implied-in-fact contract whereby the NorthBay Hospitals agreed to provide post-

24  emergency services to Blue Shield's members and Blue Shield agreed to pay the

25  NorthBay Hospitals for such services.

26     101.  As alleged above, after the NorthBay Hospitals have provided

27  emergency care to Blue Shield's members and/or insureds, and the patients' medical

28  condition has been stabilized, the NorthBay Hospitals contact Blue Shield to ask if

1    Blue Shield wishes to transfer the patient or, if not, to verify that the hospital is

2    authorized to provide post-emergency inpatient care.

3        102.    In most, if not all, cases where Blue Shield's members required post-

4    emergency inpatient care, Blue Shield chose not to transfer the patient from the

5    NorthBay Hospitals to another hospital, but instead requested that the NorthBay

6    Hospitals provide the post-emergency care.  By requesting that the NorthBay

7    Hospitals provide post-emergency care to its members and/or insureds, and by

8    authorizing the NorthBay Hospitals to provide such services, Blue Shield entered

9    into implied-in-fact contracts with the NorthBay Hospitals whereby Blue Shield

10   requested that the NorthBay Hospitals provide the post-emergency care to its

11   members or insureds, and agreed to reimburse the NorthBay Hospitals for the post-

12   emergency services.

13       103.    The NorthBay Hospitals did not agree to provide such post-emergency

14   services at rates lower than their full billed charges.

15       104.    Moreover, at the time that Blue Shield decided not to transfer the post-

16   emergency patients to other hospitals, Blue Shield knew of the rates that the

17   NorthBay Hospitals charge for their services.  The NorthBay Hospitals' charges are

18   publicly available on OSHPD's website, and Blue Shield had received, and was

19   continuously receiving, the NorthBay Hospitals' claims which contained the rates

20   that the NorthBay Hospitals charged for their various services.  If Blue Shield did

21   not want to pay the rates that the NorthBay Hospitals charged for their services,

22   Blue Shield could have, and should have, transferred the post-emergency patients to

23   hospitals that had contracts with Blue Shield.  Having chosen not to transfer the

24   patients to in-network hospitals, Blue Shield agreed to pay the NorthBay Hospitals

25   at the rates they charged for their services.

26       105.    The NorthBay Hospitals have performed all of the obligations required

27   of them under their implied-in-fact contracts with Blue Shield.

28       106.    The NorthBay Hospitals have demanded that Blue Shield pay for the

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL.: (310) 551-8111 • FAX: (310) 551-8181

medical services they have provided to Blue Shield's members, and have sent claims information to Blue Shield for pricing, processing and payment. The NorthBay Hospitals have demanded payment from Blue Shield on numerous occasions, and have objected to Blue Shield's unilateral decisions to reduce the amount of payment and/or deny payment to the NorthBay Hospitals for the medical treatment provided to Blue Shield's members.

107.   Blue Shield's payment of any amount is an acknowledgement by Blue Shield of its responsibility under an implied-in-fact contract to reimburse the NorthBay Hospitals for the post-emergency services provided to its members and/or insureds. Blue Shield's unilateral determinations to reimburse the NorthBay Hospitals' less than their billed charges on other claims are improper.

108.   Blue Shield continues to breach the implied-in-fact contracts to pay its members' and/or insureds' claims by reducing payment to the NorthBay Hospitals for medical treatment provided to Blue Shield's members, at Blue Shield's request.

109.   As a direct and proximate result of Blue Shield's breaches, the NorthBay Hospitals have been damaged in an amount to be proven at trial, plus applicable statutory interest.

## COUNT SIX

### (For Intentional Interference with Contract – Patients)

(Against BSC Life, BSC, and DOES 1 through 50)

110.   NorthBay incorporates all allegations set forth in the above paragraphs as though fully set forth herein.

111.   This Count applies to claims governed by state law.

112.   When a patient has health care coverage and seeks care at an in-network provider, generally, the health plan and patient each pay the NorthBay Hospitals a portion of the total amount due – e.g., the health plan pays 90% and the patient pays 10%. The patient's liability typically is called coinsurance and/or a deductible. When the patient seeks care at a hospital that is out-of-network, the

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL.: (310) 551-8111 • FAX: (310) 551-8181

1   patient's coinsurance or deductible generally increases – e.g., the health plan pays

2   60% and the patient pays 40%.

3       113.   In all cases, patients signed written contracts with the NorthBay

4   Hospitals requiring them to pay coinsurance or deductible amounts directly to the

5   NorthBay Hospitals in return for the services the NorthBay Hospitals provided to

6   them.  Where patients are too sick to sign such written contracts or died before the

7   contract was signed, an implied obligation to pay these amounts to the NorthBay

8   Hospitals arose upon their receipt of the services the NorthBay Hospitals provided.

9   The written and implied patient contracts will be referred to collectively hereinafter

10  as the "Patient Contracts."  Such Patient Contracts are a standard industry practice

11  known by all plans, including Blue Shield.  Thus, Blue Shield at all relevant times

12  knew of the existence of the Patient Contracts between the NorthBay Hospitals and

13  the patients.

14      114.   Blue Shield engaged in intentional acts designed to disrupt the

15  NorthBay Hospitals' relationship with the patients.  Blue Shield knew that the

16  reasonable and customary rates for the NorthBay Hospitals' non-contracted services

17  were higher than what they reported to the patients.  Even so, Blue Shield

18  intentionally misrepresented the reasonable and customary rates for the NorthBay

19  Hospitals' non-contracted services, and thus intentionally and fraudulently

20  instructed the patients to breach their written and implied contracts with the

21  NorthBay Hospitals by paying less than the appropriate coinsurance or deductible to

22  the NorthBay Hospitals.  Further, Blue Shield falsely represented in EOB's and

23  other written communications sent to patients that the NorthBay Hospitals' charges

24  "EXCEED CONTRACTED AGREEMENT" even though it knew or should have

25  known that there was no contract governing the charges that the NorthBay Hospitals

26  charged to its members or the members of the Other Payors.

27      115.   Blue Shield knew that the interference was certain or substantially

28  certain to occur as a result of their actions.

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL.: (310) 551-8111 • FAX: (310) 551-8181

116.   Blue Shield's conduct has actually disrupted the NorthBay Hospitals' relationship with the patients, including but not limited to inducing patients breach the Patient Contracts.

117.   Blue Shield's conduct has in fact and proximately caused damages to NorthBay in amounts to be proven at trial.

118.   California Civil Code § 329(a) provides that punitive damages are appropriate where the defendant engaged in conduct demonstrating oppression, fraud <u>or</u> malice.  Blue Shield's payment of the claims at issue below the reasonable and customary rates was arbitrary and capricious and was done with conscious and deliberate disregard for the rights of the NorthBay Hospitals and its members and/or insureds, and was done with a willingness to harass, annoy or injure the NorthBay Hospitals and its members and/or insureds.

119.   Because Blue Shield's conduct in misrepresenting to patients that the NorthBay Hospitals' billed charges were not reasonable and customary was willful, oppressive, fraudulent and malicious, NorthBay is entitled to punitive damages.

## <u>COUNT SEVEN</u>

### (For Recovery of Services Rendered)

(Against BSC Life, Blue Shield, and DOES 1 Through 50)

120.   NorthBay incorporates all allegations set forth in the above paragraphs as though fully set forth herein.

121.   This Count applies to claims governed by state law.

122.   The NorthBay Hospitals provided medically necessary treatment for emergency and post-emergency services to Blue Shield's members.  By words or conduct, Blue Shield requested that the NorthBay Hospitals perform such services.  As a result, Blue Shield became indebted to the NorthBay Hospitals for the services rendered by the NorthBay Hospitals to Blue Shield's members.

123.   Blue Shield has failed and refused, and continues to refuse, to timely and properly pay the NorthBay Hospitals for the medical services it has provided to

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL.: (310) 551-8111 • FAX: (310) 551-8181

1 the Blue Shield's members. Instead, Blue Shield has unilaterally decided to delay

2 payment, deny payment and/or pay whatever amount it felt appropriate for such

3 services, at rates far below the billed amounts, which constitute the services'

4 reasonable value.

5     124.   The NorthBay Hospitals have demanded, on numerous occasions, that

6 Blue Shield pay for the medical services they have provided to Blue Shield's

7 members, and have objected to Blue Shield's failure to timely and properly pay the

8 NorthBay Hospitals for the medical treatment provided to Blue Shield's members.

9     125.   Accordingly, there is now due, owing and unpaid from Blue Shield to

10 NorthBay in an amount to be proven at trial, plus applicable statutory interest.

11 ## COUNT EIGHT

12 ### (For Unfair Business Acts and Practices)

13 (Against BSC Life, BSC, and DOES 1 Through 50)

14     126.   NorthBay incorporates all allegations set forth in the above paragraphs

15 as though fully set forth herein.

16     127.   This Count applies to claims governed by state law.

17     128.   Blue Shield has engaged in unfair and/or unlawful business acts and

18 practices by, *inter alia*:

19         a.   Failing to properly and adequately compensate the NorthBay

20            Hospitals for non-contracted services by using a flawed

21            methodology and/or improperly manipulating the data in its

22            systems to purposely underpay the NorthBay Hospitals' claims.

23         b.   Having systems that Blue Shield represents as objectively

24            reflecting the rates charged by hospitals in various geographic

25            areas in California, and then improperly manipulating the data

26            relating to such charges to purposely underpay non-contracted

27            claims.

28         c.   Failing to properly and adequately compensate the NorthBay

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL.: (310) 551-8111 • FAX: (310) 551-8181

Hospitals for non-contracted services by failing to comply with Health and Safety Code section 1262.8.

    d.    Failing to properly and adequately compensate the NorthBay Hospitals for non-contracted services by failing to properly apply the criteria set forth in 28 Cal. Code Regs. § 1300.71(a)(3)(B) and California case law.

    e.    Voluntarily choosing to authorize post-stabilization care at the NorthBay Hospitals, but refusing to pay the NorthBay Hospitals at their customary charges for such services.

    f.    Failing to properly and adequately compensate the NorthBay Hospitals for emergency and post-stabilization services.

    g.    Failing to comply with Health and Safety Code sections 1371 *et seq.*, by engaging in an "unfair payment pattern."

129.   This conduct by Blue Shield constitutes illegal and unfair business practices under California Business and Professions Code section 17200 *et seq.*

130.   NorthBay seeks an injunction requiring Blue Shield to cease and desist from using its improper method for determining reasonable and customary rates for reimbursement to the NorthBay Hospitals as non-contracted providers.

131.   NorthBay seeks restitution of an amount to be proven at trial, which is the amount that Blue Shield kept which it was obligated to pay the NorthBay Hospitals for the services they provided to Blue Shield's members. NorthBay also seeks an injunction prohibiting Blue Shield from continuing to use a flawed database or system, and/or improperly manipulating the data in such database, to purposely underpay the NorthBay Hospitals' future claims.

## COUNT NINE

### (For Declaratory Relief)

(Against BSC Life, Blue Shield, and DOES 1 Through 50)

132.   NorthBay incorporates all allegations set forth in the above paragraphs

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL.: (310) 551-8111 • FAX: (310) 551-8181

as though fully set forth herein.

133.   A controversy has arisen between Blue Shield and NorthBay as to the appropriate rate that the NorthBay Hospitals are entitled to receive for the medically necessary emergency and non-emergency non-contracted services the NorthBay Hospitals provided to Blue Shield's members.

134.   NorthBay is informed and believes that Blue Shield contends that its systems accurately reflect and calculate the rates of reimbursement that the NorthBay Hospitals are entitled to receive for the non-contracted services they provide to Blue Shield's members.  NorthBay is informed and believes that Blue Shield believes that it complies with California law in calculating the reasonable and customary amounts due health care providers such as the NorthBay Hospitals.

135.   NorthBay contends that Blue Shield has a flawed methodology for calculating non-contracted claims and Blue Shield's systems contain flawed and erroneous information concerning the NorthBay Hospitals' and other hospitals' claims and/or that Blue Shield improperly manipulates the data in such systems to purposefully underpay the NorthBay Hospitals' claims.  NorthBay contends that Blue Shield has not correctly and appropriately applied the criteria for calculating the reasonable and customary amounts due non-contracted providers.

136.   Accordingly, NorthBay seeks a declaration that:

a.   Blue Shield's database contains flawed and erroneous information concerning the NorthBay Hospitals' and other hospitals' claims and/or that Blue Shield improperly manipulates the data in such database to purposefully underpay the NorthBay Hospitals' claims.

b.   Blue Shield has failed to properly apply the criteria set forth in 28 Cal. Code Regs. § 1300.71(a)(3)(B) and California case law in setting non-contracted payment rates.

c.   Blue Shield will not continue to use an improper method to

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL.: (310) 551-8111 • FAX: (310) 551-8181

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL.: (310) 551-8111 • FAX: (310) 551-8181

determine reasonable and customary rates to reimburse the NorthBay Hospitals with respect to future claims.

**WHEREFORE**, NorthBay prays for judgment against Blue Shield and DOES 1 through 50 as follows:

1. For compensatory damages in an amount to be proved at trial, plus applicable statutory interest;

2. For restitution from Blue Shield and DOES 1 through 50 in an amount to be proved at trial, plus applicable statutory interest;

3. An injunction prohibiting Blue Shield and DOES 1 through 50 from using illegal methods, and flawed databases or systems, and/or improperly manipulating the data in such databases to purposely underpay the NorthBay Hospitals' claims;

4. For a declaration that:

    a. Blue Shield's database contains flawed and erroneous information concerning the NorthBay Hospitals' and other hospitals' claims and/or that Blue Shield improperly manipulates the data in such database to purposefully underpay the NorthBay Hospitals' claims.

    b. Blue Shield has failed to properly apply the criteria set forth in 28 Cal. Code Regs. § 1300.71(a)(3)(B) and California case law in setting non-contracted payment rates.

    c. Blue Shield will not continue to use an improper method to determine reasonable and customary rates to reimburse the NorthBay Hospitals with respect to future claims.

5. For punitive damages from Blue Shield and DOES 1 through 50; and

/ / /

/ / /

/ / /

6. For such other relief as the Court deems just and appropriate.

DATED: July 24, 2017        HOOPER, LUNDY & BOOKMAN, P.C.

By: _/s/ Daron L. Tooch_

            DARON L. TOOCH
            DAVID J. TASSA
Attorneys for Plaintiff
NORTHBAY HEALTHCARE GROUP –
HOSPITAL DIVISION

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL: (310) 551-8111 • FAX: (310) 551-8181

FIRST AMENDED COMPLAINT

1

## **DEMAND FOR JURY TRIAL**

2          Pursuant to Rule 38 of the Federal Rules of Civil Procedure, NorthBay hereby

3    demands trial by jury in this action of all issues so triable.

4

5    DATED:  July 24, 2017                HOOPER, LUNDY & BOOKMAN, P.C.

6

7                                        By:   */s/ Daron L. Tooch*

8                                              DARON L. TOOCH
                                               DAVID J. TASSA
9                                        Attorneys for Plaintiff
                                         NORTHBAY HEALTHCARE GROUP –
10                                       HOSPITAL DIVISION

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**HOOPER, LUNDY & BOOKMAN, P.C.**
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL: (310) 551-8111 • FAX: (310) 551-8181

## PROOF OF SERVICE

**STATE OF CALIFORNIA, COUNTY OF LOS ANGELES**

At the time of service, I was over 18 years of age and not a party to this action. I am employed in the County of Los Angeles, State of California. My business address is 1875 Century Park East, Suite 1600, Los Angeles, CA 90067-2517.

On July 24, 2017, I served true copies of the following document(s) described as **FIRST AMENDED COMPLAINT FOR; DEMAND FOR JURY TRIAL** on the interested parties in this action as follows:

Gregory N. Pimstone, Esq.                    Defendant BLUE SHIELD OF
MANATT, PHELPS & PHILLIPS, LLP               CALIFORNIA LIFE & HEALTH
11355 West Olympic Blvd.                      INSURANCE COMPANY
Los Angeles, CA 90064-1614
Telephone: (310) 312-4000
Facsimile: (310) 312-4224
E-Mail: gpimstone@manatt.com

Amy Briggs, Esq.                             Defendant BLUE SHIELD OF
MANATT, PHELPS & PHILLIPS, LLP               CALIFORNIA LIFE & HEALTH
One Embarcadero Center, 30th Floor           INSURANCE COMPANY
San Francisco, CA 94111
Telephone: (415) 291-7400
Facsimile: (415) 291-7474
E-Mail: abriggs@manatt.com

**BY CM/ECF NOTICE OF ELECTRONIC FILING:** I electronically filed the document(s) with the Clerk of the Court by using the CM/ECF system. Participants in the case who are registered CM/ECF users will be served by the CM/ECF system. Participants in the case who are not registered CM/ECF users will be served by mail or by other means permitted by the court rules.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

Executed on July 24, 2017, at Los Angeles, California.


 /s/ *Pamela Richardson*
Pamela Richardson

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL.: (310) 551-8111 • FAX: (310) 551-8181