MANATT, PHELPS & PHILLIPS, LLP
GREGORY N. PIMSTONE (Bar No. 150203)
Email: gpimstone@manatt.com
MARINA SHVARTS (Bar No. 314146)
Email: mshvarts@manatt.com
11355 West Olympic Boulevard
Los Angeles, CA 90064-1614
Telephone: (310) 312-4000
Facsimile: (310) 312-4224

MANATT, PHELPS & PHILLIPS, LLP
AMY B. BRIGGS (Bar No. 194028)
Email: abriggs@manatt.com
One Embarcadero Center, 30th Floor
San Francisco, CA 94111
Telephone: (415) 291-7400
Facsimile: (415) 291-7474

*Attorneys for Defendants*
BLUE SHIELD OF CALIFORNIA LIFE
& HEALTH INSURANCE COMPANY and
CALIFORNIA PHYSICIANS' SERVICE
d/b/a BLUE SHIELD OF CALIFORNIA

UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| NORTHBAY HEALTHCARE GROUP – HOSPITAL DIVISION dba NORTHBAY MEDICAL CENTER and VACAVALLEY HOSPITAL,<br>            Plaintiff,<br><br>BLUE SHIELD OF CALIFORNIA LIFE & HEALTH INSURANCE COMPANY; CALIFORNIA PHYSICIANS' SERVICE dba BLUE SHIELD OF CALIFORNIA; and DOES 1-50, inclusive,<br>            Defendants. | CASE NO: 3:17-CV-02929-WHO<br><br>**JOINT STATEMENT REGARDING DISCOVERY DISPUTES**<br><br>The Hon. William H. Orrick<br>Trial Date: February 4, 2019 |

Pursuant to Judge Orrick's Standing Order for Civil Cases, Defendants Blue Shield of California Life & Health Insurance Company and California Physicians' Service dba Blue Shield of California (together, "Blue Shield") and Plaintiff NorthBay Healthcare Group – Hospital Division dba NorthBay Medical Center and VacaValley Hospital ("NorthBay," and together with Blue Shield, the "Parties") submit this Joint Statement Regarding Discovery Disputes. The Parties engaged in extensive meet and confer efforts and were unable to reach agreement on the following issues and submit the same to the Court for determination.

**I.     Blue Shield's Position: Documents Re: NorthBay's Billed Charges and Profitability**

NorthBay initiated this litigation alleging that Blue Shield has underpaid it for emergency and post-stabilization services rendered to Blue Shield's members. Under California law, a health care service plan must pay an out-of-network provider of emergency services at reasonable value, *i.e.*, market rate. *See Children's Hosp. Cent. Cal. v. Blue Cross of Cal.*, 226 Cal. App. 4th 1260, 1274 (2014). A "wide variety" of factors can inform market value, including (1) what other providers have contracted to accept for the same services pursuant to arm's length negotiations (*id.*); (2) rates paid by government payors, such as Medicare (*id.* at 1278); (3) rates paid to the provider by other payors, regardless of whether such rates were accepted (*id.* at 1275); and (4) whether the provider's earnings are reasonable (*id.* at 1274). Here, NorthBay alleges that Blue Shield must pay 100% of its billed charges, which allegedly reflect reasonable value. More precisely, NorthBay contends the sole metric of reasonable value are rates it receives from contracted payors; but, because those rates are discounted from its billed charges in exchange for a certain "volume" of patients which Blue Shield does not provide, Blue Shield is not entitled to the discount and must pay billed charges.

In addition to contesting the amount of reimbursement, NorthBay challenges the methodology by which Blue Shield calculated the payment by alleging that Blue Shield failed to properly "consider" six non-exclusive so-called *Gould* factors specified in California Code of Regulations, title 28, section § 1300.71(a)(3)(B), which include "other aspects of the economics of the medical provider's practice that are relevant[.]"[1]

To understand the basis of NorthBay's allegations and contest that its charges reflect the market rate, Blue Shield has asked NorthBay for documents that fall into two broad categories: (1) documents that explain how NorthBay arrived at its billed charges, and, relatedly, (2) documents that show NorthBay's profitability, including by department.[2] NorthBay has agreed to

---

[1] In its motion for partial summary judgment, Blue Shield asks the Court to abstain from determining the adequacy of Blue Shield's payment methodology. However, until that motion is decided, the allegations are part of the complaint.
[2] Specifically, the document requests ask for the following: **(1) Documents concerning setting billed charges**: Request No. 34: audits or analysis of billed charges; No. 35: support for contention that billed charges are "reasonable and customary"; No. 43: Documents re: methodology to develop billed charges; No. 44: Documents reviewed, considered or relied upon to develop billed charges; No. 50: analysis or summaries for emergency or poststabilization services reimbursement by payor; No. 60: analysis or studies re: chargemaster, including changes to

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1
JOINT STATEMENT REGARDING DISCOVERY DISPUTES
3:17-CV-02929-WHO

produce its hospital-wide financial statements. Otherwise, NorthBay contends that the remaining information is irrelevant.[3] This information is relevant for at least three reasons.

First, NorthBay's process for setting its billed charges is relevant to its claim that those charges reflect the market value of its medical services. For example, in responding to Blue Shield's interrogatories, NorthBay explained that in setting its charges, NorthBay takes into account, among other factors: "NorthBay's financial needs given its expected revenues and expenditures"; anticipated "capital expenditures"; and "NorthBay's obligations to meet certain financial covenants in its bond indentures."[4] Under *Children's Hospital*, however, costs to the provider should not be considered in determining the market value of services. *Id.* at 1278. Taking costs into account "might reward inefficiency and greed." *Id.* Blue Shield has a right to discover to what extend NorthBay, in demanding its billed charges (which Blue Shield contends are among the highest *in the country*), in fact seeks an amount impermissibly set to cover its costs (or maximize its revenue, or achieve another aim), untethered from market value.

Second, according to publicly available data, NorthBay has increased its billed charges from year to year in significant and sporadic amounts that Blue Shield may contend – depending on what discovery reveals – have nothing to do with the market value of its services. Because NorthBay contends otherwise, Blue Shield has a right to understand what factors do in fact drive those increases in order to defend this case.

---

chargemaster fees"; No. 61: policies, procedures, or methodologies for setting or changing chargemaster; No. 62: policies, procedures, or methodologies for administering the chargemaster"; No. 63: documents re: charges "submitted to the Office of Statewide Health Planning and Development ('OSHPD')". **(2) Documents concerning financial condition and profitability**: No. 45: documents re: profits and losses; No. 46: "audited and unaudited annual financial statements"; No. 47: financial statements by department, including the emergency department; No. 49: profitability reports concerning emergency services or poststabilization services; No. 51: Documents re: "revenues or profitability of [NorthBay's] departments, including [the] emergency department[.]"

[3] In NorthBay's initial responses to Blue Shield's requests for production, NorthBay indicated that it would be willing to "meet and confer with Blue Shield's counsel regarding a reciprocal exchange of information regarding the parties' respective methodologies for determining charges and reasonable and customary rates[.]" Blue Shield has agreed to produce documents regarding its reasonable and customary methodology, but NorthBay has reneged on its commitment to undertake a reciprocal exchange.

[4] NorthBay filed a similar action against Kaiser, alleging that it was underpaid for emergency services. In its Second Amended Complaint, NorthBay explained that it took on $392 million in debt, which it acknowledged was an indenture of "unprecedented magnitude." *NorthBay Health Care Grp. V. Kaiser Found. Health Plan, Inc.*, No. 17-cv-05005-LB (N.D. Cal.) [ECF No. 86, ¶ 89]. Judge Beeler granted Kaiser's motion to dismiss, and noted that NorthBay's "bad business decision—overextending itself by taking out an unprecedented amount of debt based on revenues that might not materialize" does not give NorthBay any rights to greater reimbursement. *See id.* [ECF No. 107, at 24:1-11]. Similarly, NorthBay has no right to pass on these costs to Blue Shield.

Third, NorthBay alleges that Blue Shield did not take into account *Gould* factors such as "aspects of the economics of the medical provider's practice that are relevant," so Blue Shield needs to understand the economics of NorthBay's practice. Emergency departments and ancillary services used to treat emergency patients typically have unique financial aspects that are generally not be visible in hospital-wide financial statements. For this reason, Blue Shield has asked for, and is entitled to, department-level financial statements.

Accordingly, the information that Blue Shield has requested concerning NorthBay's methodology for setting billed charges and financial performance (including by department) is relevant and should be produced.

**II.     NorthBay's Position:** Blue Shield concedes that California law requires <u>health plans</u> to reimburse <u>hospitals</u> the reasonable value of its services, but says nothing about the price that hospitals may charge for their services, or the method by which hospitals may set those charges. California law requires Blue Shield to use the six *Gould* factors in determining reasonable value for the purposes of calculating reimbursement, but does not require NorthBay to set its charges in accordance with the *Gould* factors. Cal. Code Regs. tit. 28, § 1300.71(a)(3)(B).

The six *Gould* factors that Blue Shield must use to determine reasonable value do not include any consideration of the manner in which the hospital sets its charges. And none of the cases considering the *quantum meruit* value of hospital services – including the very case Blue Shield cites – suggest that a hospital's methodology in setting its charges is a relevant factor in determining reasonable value.

*Children's Hospital*, the seminal California case discussing the evidence relevant to *quantum meruit* disputes between health plans and hospitals, explained that the reasonable value of hospital services is determined by "the price that would be agreed upon by a willing buyer and a willing seller negotiating at arms' length." 226 Cal.App.4th 1260, 1275 (2014). In other words, reasonable value determination does not depend on <u>why</u> the plaintiff charged what it did, but instead on the <u>market value</u> of the services at issue. *Id.* The *Children's* court provided numerous examples of the types of evidence that may be relevant in addition to the factors set forth in *Gould*, including (1) expert testimony regarding the value of the services, (2) "agreements to pay

and accept a particular price;" and (3) the prevailing rates charged in the general geographic area. *Id.* at 1275-76. Notably absent from *Children's* lengthy discussion of relevant evidence is any mention of the method by which the plaintiff hospital set its charges.

Blue Shield argues that it is entitled to information as to how NorthBay sets its charges because "Blue Shield has a right to discover to what exten[t] NorthBay … seeks an amount impermissibly to cover its costs …" (*See* p. 2) Yet, Blue Shield acknowledges that "[un]der *Children's Hospital*, however, costs to the provider should not be considered in determining the market value of services. Taking costs into account 'might reward inefficiency and greed.'" *Id.* at 1278. In reaching its decision, *Children's* cited *Shaffer v. Superior Court*, 33 Cal.App.4th 993, 1002-1103 (1995), which rejected a cost-plus approach to determining the reasonable value of attorneys' fees. In *Shaffer*, the trial court, in a client's malpractice case against a law firm, granted plaintiff's motion to compel defendant's contract attorney to disclose the hourly rate defendant paid her while she was working on plaintiff's case. Plaintiff argued that the information was relevant to determine whether the defendant had charged him an unconscionable fee. The Court of Appeal issued a writ of mandate directing the trial court to vacate its order on the grounds that the law firm's costs or profit margin was irrelevant to the issue of reasonable value. *Id.* Reasonable value is determined by the quality of the attorneys' services and comparing what they charged to what other attorneys in the marketplace charges for similar services. "Examination of profits would penalize law firms which are able to produce at costs substantially less than their competitors. It would unfairly penalize the efficient and reward the inefficient. Additionally, it would place courts in the position of supervising attorney fees on the basis of individual profit margins instead of the going market price for given services. This would be an unwarranted burden and bad public policy." *Id.* at 1003.

So too with hospital services. What markup over costs NorthBay considered in setting its charges are irrelevant. *Children's* held that "the costs of the services provided are not relevant to a determination of reasonable value." 226 Cal.App.4th at 1278. And yet Blue Shield insists that production of these documents is necessary in order to ensure that NorthBay does not improperly inject costs into the reasonable value determination. This is nonsense. Blue Shield seeks

concededly irrelevant documents on the theory that NorthBay might attempt to inject an irrelevant issue into the case, and the only evidence that Blue Shield cites to support this theory is an interrogatory response provided by NorthBay <u>subject to the objection that such information was not relevant to reasonable value</u>.  Make no mistake, it is Blue Shield, not NorthBay, that is seeking to introduce costs into the reasonable value analysis in direct violation of the *Children's* holding.  NorthBay has no intention of introducing cost evidence in its case, and Blue Shield's motion is a transparent prelude to Blue Shield's attempt to introduce such evidence itself.

While hospitals are required to have a "chargemaster" setting forth the rates they charge for every service offered, they are free to set those rates however they want.  NorthBay has already agreed to produce its chargemasters for the relevant years, but Blue Shield seeks documents relating to the <u>method</u> by which NorthBay determines its chargemaster rates.  Under *Children's*, such documents are irrelevant.[5]

NorthBay has also agreed to produce copies of its contracts with other payors, such as United Healthcare, Aetna, Cigna, Anthem, etc.  In these contracts, NorthBay has agreed to discount its rates in exchange for these payors encouraging their members to obtain their healthcare services at NorthBay (as opposed to Blue Shield who discourages its members from obtaining their healthcare services at NorthBay).  As *Children's* held, these contract rates are also evidence of the reasonable value of hospital services. 226 Cal.App.4th at 1278.

Finally, NorthBay's costs, profitability by department, and pricing information are proprietary trade secrets[6], and Blue Shield has failed to show a "substantial need for the testimony or material that cannot be otherwise met without undue hardship."  *Gonzales v. Google*, 234 F.R.D. 674, 684 (N. D. Cal. 2006).

---

[5] Blue Shield asserts that this information is relevant for the additional reason that "NorthBay alleges that Blue Shield must pay 100% of its billed charges."  Not so.  NorthBay seeks the reasonable value of its services, which "might be the bill the doctor [or hospital] submits, or the amount the HMO chooses to pay, or some amount in between." *Prospect Medical Group, Inc. v. Northridge Emergency Medical Group*, 45 Cal.4th 497, 505 (2009); *Children's,* 226 Cal.App.4th at 1275.

[6] *See SI Handling Systems, Inc. v. Heisley,* 753 F.2d 1244, 1260 (3d Cir. 1985) (cost and pricing information are trade secret); *Lumex, Inc. v. Highsmith,* 919 F. Supp. 624, 628-630 (E.D.N.Y. 1996) (pricing, costs and profit margins are trade secrets); *Whyte v. Schlage Lock Co.,* 101 Cal. App. 4th 1443, 1455 (2002) (company's profit margins and costs are protected trade secrets because the information "has independent economic value").

| | | |
|---|---|---|
| 1 | Dated: September 20, 2018 | MANATT, PHELPS & PHILLIPS LLP |

By: /s/ Amy B. Briggs
AMY B. BRIGGS
Attorneys for Defendants BLUE SHIELD OF CALIFORNIA LIFE & HEALTH INSURANCE COMPANY and CALIFORNIA PHYSICIANS' SERVICE dba BLUE SHIELD OF CALIFORNIA

Dated: September 20, 2018   HOOPER, LUNDY & BOOKMAN, P.C.

By: /s/ David J. Tassa
DAVID J. TASSA
Attorneys for Plaintiff NORTHBAY HEALTHCARE GROUP – HOSPITAL DIVISION dba NORTHBAY MEDICAL CENTER AND VACAVALLEY HOSPITAL

320941573.1