UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NORTHBAY HEALTHCARE GROUP - HOSPITAL DIVISION,<br><br>Plaintiff,<br><br>v.<br><br>BLUE SHIELD OF CALIFORNIA LIFE & HEALTH INSURANCE, et al.,<br><br>Defendants. | Case No. 17-cv-02929-WHO<br><br>**ORDER GRANTING DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT AND RESOLVING DISCOVERY DISPUTES**<br><br>Re: Dkt. Nos. 47, 57 |

## INTRODUCTION

Plaintiff NorthBay Healthcare Group Hospital Division d/b/a NorthBay Medical Center and VacaValley Hospital ("NorthBay") filed a suit over reimbursements that it believes were not for the reasonable and customary value of the services given to members of defendant Blue Shield of California Life & Health Insurance Company and California Physicians' Service d/b/a Blue Shield of California ("Blue Shield"). Count Eight of NorthBay's complaint alleges that Blue Shield's reimbursement methodology constituted an unfair business practice under California's Unfair Competition Law ("UCL"), California Business and Professions Code Section 17200 *et seq.*, and Count Nine seeks related declaratory relief. NorthBay asserts that Blue Shield uses a flawed methodology or manipulates data, did not properly apply criteria for setting reimbursement rates, and engaged in an unfair payment pattern.

Blue Shield moves for partial summary judgment on those counts, contending that there is no private right of action to challenge the methodology used to determine reasonable reimbursements and urging that even if there were the court should abstain from functioning like an administrative body on issues of complex economic policy. Given the regulations and oversight of the Department of Manage Health Care ("DMHC") concerning these payments,

1  NorthBay's UCL claim must be predicated on an incorrect reimbursement amount that causes it
2  injury rather than the methodology that led to it. Accordingly, I GRANT Blue Shield's motion for
3  partial summary judgment.

**BACKGROUND**

**I.    FACTUAL AND LEGAL BACKGROUND**

NorthBay is a nonprofit healthcare organization that owns and operates two hospitals in Solano County, California. *See* First Amended Compl. ¶ 3. The hospitals provide comprehensive care, including emergency care. *Id*. Blue Shield is a health care service plan in which members receive care from in-network hospitals for more favorable reimbursement terms than if they were out-of-network. *See* Crawford Decl. ¶¶ 3–5 (Dkt. No. 47-3). The health plan implements a two-tiered benefit structure to control costs and offer lower monthly dues to its members. *Id*. ¶ 6.

When health plan members visit hospitals that are outside the network, such as Blue Shield members who receive emergency care from NorthBay, hospitals are required to provide treatment. *See* Cal. Health & Safety Code § 1317; 42 U.S.C. § 1395dd(a). In California, health plans must promptly pay a reasonable amount for the emergency services, called the "reasonable and customary value." Cal. Code Regs. tit. 28, § 1300.71(a)(3)(B), Cal. Health & Saf. Code §1371.4(b). These "prompt-pay" laws, embodied in the Knox-Keene Health Care Service Plan Act of 1975, ("Knox-Keene Act" or the "Act") require health plans to reimburse hospitals within thirty working days after it receives a complete claim. *See id*. § 1371.35(a).

California's "prompt-pay" laws also task the Department of Managed Health Care ("DMHC") with regulating the state's health care policy. *See id*. § 1371.38. In turn, DMHC directs health plans like Blue Shield to adopt their own reasonable and customary value methodology ("R&C methodology") for reimbursing non-contracted hospitals according to its guidance and regulations. *See* Cal. Code Regs. tit. 28, § 1300.71(a)(3)(B). Health plans then submit their R&C methodologies to the DMHC consistent with this regulatory scheme.

In Section 1300.71(a)(3)(B), the DMHC adopted what are termed the *Gould* factors (named after *Gould v. Workers' Comp. Appeals Bd.*, 4 Cal. App. 4th 1059, 1071 (1992)) to determine whether a given reimbursement amount is of "reasonable and customary value." The

2

*Gould* factors include six non-exclusive considerations related to medical provider qualifications, the nature of the service provided, fees charged by geography, and other considerations. *Id*. Health plans must consider these factors when they develop their R&C methodology, but there is no regulation dictating the appropriate way to consider them or requiring a specific reimbursement value. As amicus curiae in other law suits, the DMHC has represented before that it "does not specifically approve or disapprove filings purporting to establish a methodology, pursuant to Title 28 Cal. Code Regs. § 1300.71(a)(3)(B), for reimbursement of non-contracted providers." Tooch Decl. Ex. D. ¶ 7 (Dkt. No. 52-1). But the DMHC has the authority to take disciplinary actions like civil, criminal, or administrative penalties if it does find an R&C methodology is non-compliant with Section 1300.71. *See* Cal. Code Regs. tit. 28, § 1300.71(s)(2).

Blue Shield submitted its R&C methodology to the DMHC around March 2015. *See* Vojta Decl. ¶ 5 (Dkt. No. 47-1). Its R&C methodology considers reasonable and customary value of non-contracted services by what other hospitals in the region charge or receive for payment of similar services, the hospital's own reported costs of operation, and other considerations. *Id*. ¶ 4. Consistent with the DMHC's request, Blue Shield detailed how it considered the *Gould* factors in compliance with Section 1300.71(a)(3)(B). *See* Tooch Decl. Ex. A at BSC002648. The DMHC has not required Blue Shield to change its R&C methodology. *Id*. ¶ 8.

## II. PROCEDURAL BACKGROUND

NorthBay filed suit in May 2017, and voluntarily amended its complaint two months later in July. *See* Compl. (Dkt No. 1); Amended Compl. (Dkt. No. 17). It brings nine claims against Blue Shield for violations of the Employee Retirement Income Security Act of 1974, various breaches of contract, recovery for services rendered, unfair business practices, and declaratory relief. Blue Shield answered the amended complaint and filed a counterclaim alleging unjust enrichment. *See* Answer and Counterclaim (Dkt. No. 18). At a June 2018 case management conference, the parties agreed to bifurcate the issues for a jury trial first addressing the reasonable value of NorthBay's services. *See* Joint Case Management Statement (Dkt. No. 36); Minutes Entry (Dkt. No. 37).

This motion brings two of NorthBay's nine claims to the fore. NorthBay alleges in Count

3

1  Eight that Blue Shield engaged in unfair business practices under the UCL for failing to
2  compensate NorthBay hospitals for non-contracted services, and manipulating data inputted to a
3  flawed methodology to underpay non-contracted claims. *See* Amended Compl. ¶ 128.
4  Considering those alleged unfair practices, NorthBay seeks injunctive relief and restitution to stop
5  Blue Shield from using a reimbursement methodology that improperly considers factors required
6  in Section 1300.71 and *Gould*. *See* Amended Compl. ¶ 130. Relatedly, Count Nine seeks
7  declaratory relief that Blue Shield's reimbursement methodology is improper, that it manipulates
8  data to underpay claims, and that it will not continue being used for future reimbursements. *See*
9  Amended Compl. ¶ 136.

## LEGAL STANDARD

A party is entitled to summary judgment where it "shows that there is no genuine dispute as to any material fact and [it] is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). To prevail, a party moving for summary judgment must show the lack of a genuine issue of material fact with respect to an essential element of the non-moving party's claim, or to a defense on which the non-moving party will bear the burden of persuasion at trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant has made this showing, the burden then shifts to the party opposing summary judgment to identify "specific facts showing there is a genuine issue for trial." *Id.* The party opposing summary judgment must then present affirmative evidence from which a jury could return a verdict in that party's favor. *Anderson v. Liberty Lobby*, 477 U.S. 242, 257 (1986).

On summary judgment, the court draws all reasonable factual inferences in favor of the non-movant. *Id.* at 255. In deciding a motion for summary judgment, "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Id.* However, conclusory and speculative testimony does not raise genuine issues of fact and is insufficient to defeat summary judgment. *See Thornhill Publ'g Co., Inc. v. GTE Corp.*, 594 F.2d 730, 738 (9th Cir. 1979).

## DISCUSSION

Blue Shield moves for partial summary judgment, arguing: (i) NorthBay has no private

right of action to challenge Blue Shield's R&C methodology under the UCL, and (ii) even if it did, the court should abstain from interpreting complex economic policy and deny declaratory and injunctive relief.[1] The parties also bring discovery disputes concerning Blue Shield's request for billed charge and profitability documents. For the reasons below, I do not find NorthBay can pursue a UCL claim predicated on improperly considering the *Gould* factors or considerations required by Section 1300.71 and I DENY declaratory and injunctive relief related to that cause of action. I also DENY Blue Shield's request for documents which are not relevant for determining reasonable value considering NorthBay disavowed its intent to introduce or rely on them.

## I. UNFAIR COMPETITION LAW CLAIM

The UCL prohibits "any unlawful, unfair or fraudulent business act or practice." CAL. BUS. & PROF. CODE § 17200. "Each of these three adjectives captures a separate and distinct theory of liability." *Rubio v. Capital One Bank*, 613 F.3d 1195, 1203 (9th Cir. 2010) (quotation marks omitted). The UCL's "coverage is sweeping, embracing anything that can properly be called a business practice and that at the same time is forbidden by law." *Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1140 (9th Cir. 2012). NorthBay argues that its challenge to the reimbursement methodology is permissible under the UCL's unlawful and unfair prongs.

### A. "Unlawful" Prong

The "unlawful" prong of the UCL "borrows violations of other laws and treats them as independently actionable." *Daugherty v. Am. Honda Motor Co., Inc.*, 51 Cal. Rptr. 3d 118, 128 (Ct. App. 2006). NorthBay brings its UCL claim predicated on violations of the Knox-Keene Act.

---

[1] NorthBay's opposition was filed along with an administrative motion to file materials under seal that were designated as confidential by Blue Shield. With dispositive motions the strong presumption of access can be overcome by demonstrating a compelling reason to do so, such as an articulated interest favoring secrecy that outweighs the public interest in understanding the judicial process. *Kamakana v. City & Cty. of Honolulu*, 447 F.3d 1172, 1179, 1181 (9th Cir. 2006). Blue Shield offers compelling reasons to maintain certain materials under seal because its proprietary R&C methodology is considered a trade secret. *See In re Elec. Arts, Inc.*, 298 F. Appx. At 568, 569 (9th Cir. 2008). However, Blue Shield's declaration states that the opposition need not be filed under seal and the redactions to the Tooch Declaration and certain exhibits are more extensive than required. *See* Vojta Decl. ¶¶ 4–5 (Dkt. No. 55). The Clerk is directed to unseal the opposition (Dkt. No. 52) and NorthBay is ordered to refile the Tooch Declaration and attached exhibits (Dkt. No. 52-1) to match the redactions identified by Blue Shield in the Vojta Declaration. *See* Vojta Decl. ¶¶ 4–5 (Dkt. No. 55).

The Act requires health plans like Blue Shield to reasonably reimburse non-contract providers like NorthBay "for emergency services and care provided to its enrollees, until the care results in stabilization of the enrollee." Cal. Health & Saf. Code § 1371.4. Those reimbursements must be based on a methodology that incorporates "statistically credible information" and the six *Gould* considerations:

> (i) the provider's training, qualifications, and length of time in practice; (ii) the nature of the services provided; (iii) the fees usually charged by the provider; (iv) prevailing provider rates charged in the general geographic area in which the services were rendered; (v) other aspects of the economics of the medical provider's practice that are relevant; and (vi) any unusual circumstances in the case.

Cal. Code Regs. tit. 28, § 1300.71(a)(3)(B).

In general, private rights of action are permitted to challenge violations of the Knox-Keene Act under the UCL and common law. *See, e.g., Cal. Pac. Reg'l Med. Ctr. v. Global Excel Mgmt., Inc.*, No. 13-CV-00540-NC, 2013 WL 2436602, at *4 (N.D. Cal. June 4, 2013) ("two California appellate decisions have held that medical providers could bring private actions for violations of the Knox–Keene Act under the UCL and common law theories."); *Stanford Hosp. & Clinics v. Humana, Inc.*, No. 5:13-CV-04924-HRL, 2015 WL 5590793, at *8 (N.D. Cal. Sept. 23, 2015).

Ample case law supports a right to predicate UCL claims for inadequate or unpaid reimbursements on violations of Section 1371.4. *See Children's Hosp. Cent. Cal. v. Blue Cross of Cal.*, 226 Cal. App. 4th 1260, 1275 ("the DMHC intended that . . . value disputes be resolved by the courts"); *Cal. Pac. Reg'l Med. Ctr.*, No. 13-CV-00540-NC, 2013 WL 2436602, at *5 (N.D. Cal. June 4, 2013) ("while there is nothing in section 1371.4 that precludes private causes of action to pursue reimbursement of amounts owed, those actions are limited to other statutes, like California's Unfair Competition Law…") (internal quotations omitted); *see also Prospect Med. Grp., Inc. v. Northridge Emergency Med. Grp.*, 45 Cal. 4th 497, 505 (2009) ("when disputes arise, emergency room doctors [may] sue the HMO directly for the reasonable value of their services."). Blue Shield does not dispute that a UCL claim can be brought against it to recover the value allegedly owed for a reasonable and customary reimbursement. *See* Reply at 3:5-7 (Dkt. No. 56).

Yet NorthBay's UCL claim seeks to enjoin the methodology Blue Shield uses under

Section 1300.71(a)(3)(B) and the *Gould* factors, not challenge the actual reasonable and customary value derived from that methodology. Neither party has provided cases on the precise issue of a challenge to the methodology required in Section 1300.71(a)(3)(B). Blue Shield's citation to a California Superior Court case, *NorthBay Healthcare Group, et al. v. Kaiser Foundation Health Plan, Inc., at al.*, No. FCS 026967 (Cal. Super. Ct. April 14, 2008), appears intended to show NorthBay has failed once before when it brought an identical claim in state court. While on point, the case is not helpful and contains no reasoning in support of its holding that "even if [the health plan's] methodology violated any one of [the provisions of the Knox-Keene Act], such violation may not serve as a basis for an action for unfair business competition." Briggs Decl. Ex. B (Dkt. No. 47-2).

Several of Blue Shield's other cases, though factually distinct, merely reaffirm that UCL claims must be based on unlawful conduct. *See, e.g.*, *Samura v. Kaiser Found. Health Plan, Inc.*, 17 Cal. App. 4th 1284, 1299 (1993) (limiting a contracting provider's UCL claim for injunctive relief to "acts which are made unlawful by the Knox-Keene Act."); *John Muir Health v. Global Excel Management*, 2014 WL 6657656, at *3 (N.D. Cal. Nov. 21, 2014) (holding a plaintiff "may bring private actions for violations of Section 1371.4 under the UCL and common law theories"); *Desert Healthcare Dist. v. PacifiCare, FHP, Inc.*, 94 Cal. App. 4th 781, 793 (2001) (holding a UCL claim based on Section 1371.4 failed because "there was nothing unlawful, unfair, or fraudulent about those agreements."). These cases relate to the results of a value determination – the reasonable reimbursements and the amount paid – not the methodology which is at issue here.

The California Court of Appeal's decision in *Children's Hosp.*, 226 Cal. App. 4th at 1273, is also focused on reasonable value, but is informative of whether a party can pursue a claim based on improperly implementing its methodology. The court discussed that the DMHC's intent with Section 1300.71(a)(3)(B) was to "establish a methodology for determining the reasonable value of health care services by noncontracted providers but that the criteria specified do not dictate a specific payment rate." A lawful methodology only needed to follow "minimum payment criteria" to ensure compliance. *Id*. The court went on to find that "while the *Gould* court set forth a comprehensive set of factors for the situation presented there, those factors are not exclusive or

7

necessarily appropriate in all cases." *Id*. at 1275.

Here, there is no unlawful conduct that can be deduced from NorthBay's claim that Blue Shield "improperly" applied the considerations. As stated in *Children's Hosp.*, the regulation and the *Gould* factors it is based on, are considered minimum criteria. The regulation defines "Reimbursement of a Claim" in the non-contracted context as "the payment of the reasonable and customary value for the health care services rendered based upon *statistically credible information* that is updated at least annually and *takes into consideration…*" the equivalent of the *Gould* factors. Cal. Code Regs. tit. 28, § 1300.71 (emphasis added). There is no mandatory methodology to apply beyond taking consideration of the factors. Even if Blue Shield improperly applied the considerations as NorthBay alleges, implicit in that claim is that Blue Shield did consider them consistent with the minimum requirements of Section 1300.71.[2]

### B. "Unfair" Prong

The "unfair" prong of the UCL prohibits a business practice if it "violates established public policy or if it is immoral, unethical, oppressive or unscrupulous and causes injury to consumers which outweighs its benefits." *McKell v. Wash. Mut., Inc.*, 142 Cal. App. 4th 1457, 1473 (2006). California is currently "unsettled" on the standard to apply to unfairness claims. *See Hadley v. Kellogg Sales Co.*, 243 F. Supp. 3d 1074, 1104 (N.D. Cal. 2017). For allegations of unfairness to business competitors, the California Supreme Court rejected a traditional balancing test and instead now requires claims to be "tethered to some legislatively declared policy." *Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*, 20 Cal. 4th 163, 186 (1999). The courts are divided on the correct test for consumer actions, however, allowing the use of either the traditional balancing test or the tethering test. *See Lozano v. AT & T Wireless Servs., Inc.*, 504 F.3d 718, 735 (9th Cir. 2007).

---

[2] This determination is also evident from the DMHC's letter to health plans detailing that R&C methodologies are not unfair or unjust when they incorporate factors including "…(4) *adequate procedures to timely and fully consider* the remaining '*Gould*' criteria upon the provider's submission of relevant supporting documentation as part of either the original claim submission or the payor's appeal process/dispute resolution mechanism." Blue Shield Req. for Judicial Not. Ex. 2 (Dkt. No. 48) (emphasis added). The DMHC's "consideration" requirement, rather than specifically dictating payment rates for health plans, recognizes that no unlawful conduct arises from how the health plan ultimately derives and applies its methodology.

8

Regardless of the test applied, however, this district has held that "where the unfair business practices alleged under the unfair prong of the UCL overlap entirely with the business practices addressed in the fraudulent and unlawful prongs of the UCL, the unfair prong of the UCL cannot survive if the claims under the other two prongs of the UCL do not survive." *Hadley*, 243 F. Supp. 3d at 1104–05 (citing *Punian v. Gillette Co.*, 2016 WL 1029607, at *17 (N.D. Cal. Mar. 15, 2016) (holding that an unfair prong claim did not survive where "the cause of action under the unfair prong of the UCL overlaps entirely with Plaintiff's claims" under other UCL prongs.))

NorthBay's cause of action under the unfair prong of the UCL fails under either test. Applying the tethering test, NorthBay's claim that Blue Shield is engaged in an unfair payment pattern for improperly considering the *Gould* factors or Section 1300.71 does not violate any "legislatively declared policy" for the same reasons it is not predicated on an unlawful action or a violation of any provision in the Knox-Keene Act. Even though NorthBay argues that the existing R&C methodology harms Blue Shield members, NorthBay is not bringing a representative claim seeking relief on behalf of consumers, nor is it clear that it could establish such standing. As Blue Shield asserts, private actions under the UCL may be "brought exclusively by a person who has suffered injury in fact and has lost money or property as a result of the unfair competition." *Amalgamated Transit Union, Local 1756, AFL-CIO v. Superior Court*, 46 Cal. 4th 993, 942 (2009) (quoting Bus. & Prof. Code § 17204)). NorthBay's claim under the "unfair" prong overlaps entirely with the "unlawful" prong and therefore cannot survive if (as I already found) the unlawful prong does not survive.

A UCL claim for restitution or injunctive relief cannot proceed if the plaintiff's claim rests, as NorthBay's does here, on an allegation that Blue Shield has failed to comply with Section 1371.4 and Section 1300.71 by "improperly" considering the factors outlined in the Knox-Keene Act. *See* Oppo. at 22. Accordingly, the motion for partial summary judgment of Count Eight is GRANTED.

## II. ABSTENTION

Blue Shield asks the court to abstain from interpreting or enforcing the prompt-pay laws in

9

the Knox-Keene Act even if a private right of action existed under the UCL. It contends the court is "ill-equipped" to make "complex economic and actuarial determinations" on the proper way to consider the *Gould* factors in its R&C methodology and would improperly assume the administrative functions of the DMHC by attempting to do so. *See* Mot. Summ. J. at 12, 14 (Dkt. No. 47). Because I agreed with Blue Shield that no UCL claim can be predicated on improperly applying Section 1300.71 and improperly considering the *Gould* factors in developing an R&C methodology, I need not opine on the abstention arguments presented by the parties. However, even if I were to allow NorthBay's UCL claim to proceed, since the DMHC did not mandate a specific methodology to be applied I would not attempt to either. *See Alvarado v. Selma Convalescent Hosp.*, 153 Cal. App. 4th 1292, 1298 (2007) (finding abstention appropriate for complex economic policy "best handled" by an administrative agency.).

## III. INJUNCTIVE AND DECLARATORY RELIEF

Blue Shield also contends the court should deny injunctive relief because enjoining use of the R&C methodology would require the court to direct Blue Shield how it could fashion any alternative lawful methodology. I disagree that enjoining any application of the existing R&C methodology would necessarily require the court to devise a replacement methodology for Blue Shield. Nevertheless, NorthBay's claim for injunctive relief is not successful for the reasons discussed. Count Nine for declaratory relief is DENIED AS MOOT because each declaratory judgment it seeks relates to Blue Shield's allegedly improper application of the Section 1300.71 considerations in devising its R&C methodology.

## IV. DISCOVERY DISPUTES

In addition to the merits, the parties filed a joint statement regarding discovery disputes on September 20, 2018. *See* Statement (Dkt. No. 57). Blue Shield has asked NorthBay for documents explaining how NorthBay reached its billed charges and documents showing NorthBay's profitability. NorthBay disclaims any intent to introduce this cost-related evidence. *See id*. at 5. Once again, *Children's Hosp*. is informative. *See* 226 Cal. App. 4th at 1278. In quantum meruit disputes such as this, the reasonable and customary value of hospital services is determined by value to the recipient, not the cost to the provider. *Id*. ("the costs of the services

provided are not relevant to a determination of reasonable value."). The court discussed many ways a plaintiff could prove reasonable value, but at bottom it is determined by "the price that would be agreed upon by a willing buyer and a willing seller negotiating at arms' length." *Id*. at 1275. A party suing for its reasonable value "may testify as to the value of his services…However, such evidence is not required…". *Id*. at 1274. Because NorthBay does not intend to introduce such evidence on the value of its services, Blue Shield's request for documents related to NorthBay's profitability and how it determined its billed charges is DENIED.

## CONCLUSION[3]

For the reasons stated, Blue Shield's motion for partial summary judgment is GRANTED. Blue Shield's motion for partial summary judgment on Count Eight, which alleges unfair business practices, is GRANTED with respect to challenging whether Blue Shield properly considered Section 1300.71 when developing its R&C methodology. Blue Shield's motion for partial summary judgment of Count Nine, seeking declaratory relief, is also GRANTED, as each declaratory judgment NorthBay seeks is related to the issues dismissed in Count Eight.

**IT IS SO ORDERED.**

Dated: October 26, 2018

William H. Orrick
United States District Judge

---

[3] The parties requested judicial notice of various public records including a court case, government website, and public administrative records. *See* Requests for Judicial Notice (Dkt. Nos. 48 & 53). DMHC's letter to health plans is an undisputed public record from an administrative agency, and judicial notice is appropriate to the extent it is relied on in this Order. *See* Blue Shield Req. for Judicial Not. Ex. 2 (Dkt. No. 48); *see also Interstate Nat. Gas Co. v. S. California Gas Co.*, 209 F.2d 380, 385 (9th Cir. 1953) (taking judicial notice of administrative records). All other requests for judicial notice of documents not relied on are DENIED AS MOOT. Additionally, NorthBay filed an administrative motion for leave to file a sur-reply, arguing that Blue Shield introduced new arguments in its own reply brief. *See* Motion for Leave to File Sur-Reply (Dkt. Nos. 58, 59). The court's review found no new arguments were made on reply and this request is also DENIED.

11